STATE OF MISSOURI, EX REL. L. B. BEACH, CIRCUIT AT-
TORNEY, Relator, *v.* CITIZENS' BENEFIT ASSOCIATION OF
ST. LOUIS, Respondent.

June 4, 1878.

1. The business of making assurance upon lives cannot be carried on in this
State without the grant of a franchise for that purpose.

2. Though the amount payable is not a gross sum, but a sum graduated by the
number of persons in a given class at the time of the death of the insured,
and though there is no means of compelling the payment of the assessment
made upon the death, and though the insurer is not liable for the amount
actually collected from members upon the happening of the loss, the agree-
ment may be a real contract of insurance where there is a payment of
consideration by one and a promise by the other to pay upon the happen-
ing of the loss; and where the main object of the existence of the company
making such contracts is to do such insuring, it is doing an insurance busi-
ness within the meaning of the statute.

3. A corporation with salaried officers, paying commissions on risks obtained,
insuring and admitting to membership any one having the requisite con-
ditions of age and health, and requiring no other qualification for mem-
bership, cannot evade the insurance laws by calling itself a benevolent
society and obtaining a charter as such.

APPLICATION for *quo warranto.*
*Judgment of ouster.*

REYNOLDS & FROST, for relator: The contract between
this association and its members is an insurance contract. —
Bouv. L. Dic., tit. " Insurance," and " Insurance on
Lives — Contract, 1 and 2 ;" Burrill's L. Dic., tit. " Insur-
ance ;" 1 Marsh. on Ins. 1, 52, 53 ; Bliss on Ins., sect. 3 ;
May on Ins., sect. 1 ; *Harrison* v. *Miller*, 7 Term Rep. 340 ;
7 Term Rep. 338.   The fact that its object is benevolent
does not change its character.—*The Commonwealth* v. *Weth-
erbee,* 105 Mass. 140 ; 2 Marsh. on Ins. 776, 777 ; 3 Seld.
237.   Nor that no sum in gross is set out in the contract.—
Broom's Leg. Max. *624.

McGINNIS & SEARLE, for respondent: Life insurance *is a
contract* by which the insurer, in consideration of a gross
sum or an annual payment, agrees to pay the person for
whose benefit the insurance is effected, or his executors, ad-

ministrators, or assigns, a certain *sum of money, or annuity, on the death of the person whose life is insured, whenever it happens,* if the insurance is for the whole life ; or in the event of the death happening within a certain period, if the insurance is only for that period. — 3 Kent's Comm. 365 ; 1 Williams on Pers. Pr. 159 ; Smith's Merc. Law, 456 ; Bunyon's Life Assur. 1, 5 ; Baron Parke, 15 C. B. 365.

BAKEWELL, J., delivered the opinion of the court.

This was an information in the nature of a *quo warranto,* filed by the circuit attorney against defendants for carrying on the business of life-insurance within the city of St. Louis without any charter or lawful authority.

The return alleges that defendant is a corporation organized under the general law in regard to benevolent associations, for the propose of giving financial aid to the families of deceased members from the proceeds of assessment upon the members of the association ; that defendant has in all respects strictly pursued the objects for which it was created, and has never carried on a life-insurance business.

The answer is accompanied by an agreed statement of facts, of which the charter and by-laws of defendant, the form of contract with its members, and blank forms of examination on application for membership, form a part.

Relator asks for judgment of ouster upon the pleadings and evidence.

The articles of association of defendant, filed at the time of the application for incorporation under the provisions of law in regard to the incorporation of benevolent associations (Wag. Stats. 339, sect. 1 *et seq.*), state that its objects are to give financial aid to the widows and children of deceased members, or to such uses as the members shall by last will appoint. If there are neither widow, children, nor will, then the aid is to form part of the general fund of the association. Applicants for membership must be between twenty-five and fifty-five years old, and residents, at the time, of St. Louis, or of East St. Louis, on the opposite side of the river,

in Illinois. The board of trustees accept or reject applications. The officers, and the mode of their election and their duties, are set out. The board of trustees are authorized to make by-laws; to regulate the terms of membership and rate of initiation-fee; to divide the membership into classes according to the sum to be paid on death of a fellow-member, and to limit the number of members in each class; to regulate the manner and time of payment, and the amount to be paid to the representatives of a deceased member of a class; to determine the disposition of the surplus funds; to provide for new offices and officers; to amend the by-laws; to provide what shall constitute forfeiture of membership; and to provide a rule for the equitable distribution among its members, if two-thirds of the members shall determine to close the affairs. The association may hold personalty to the amount of $250,000; it may continue for ninety-nine years; the trustees may invest the surplus funds in bonds of the State or of the United States, and not otherwise.

The by-laws require every person applying for membership to answer, in writing, printed questions such as are usually put by insurance companies, and to furnish a certificate by a medical examiner such as is usually required by such companies.

The association consists of two classes, A and B, each limited to two thousand members; one man may belong to both classes. The annual membership-fee for men under forty is $5 in class A, and $3 in class B; and for members over forty it is $7.50 in A, and $4.50 in B. On admission each member pays a certificate-fee of $1, and an assessment-fee as upon a member's death. When a member dies, each member of his class is assessed $2.50 or $1, according to the class of the deceased, the higher assessment being for class A. Proofs of loss are to be filled up according to a blank form, and if found correct on investigation, the board orders payment in thirty days, and causes an assessment of the class of the deceased; if this is not paid in thirty days,

failure to pay forfeits membership; the member who has forfeited may be reinstated on payment of arrears. The executive committee is to take charge of all business and property, and see to the safety of investments. It meets at semi-monthly intervals, and its members are paid $2 each for each attendance, and may hold extra meetings. The duties of other officers are set forth. The manager and secretary receive such compensation as the trustees provide. The manager is to solicit for members, and each member receives $1 for each applicant he procures who is accepted.

The certificate of membership is in the following form:

Class B.                                    No. ——.

CITIZENS' BENEFIT ASSOCIATION OF ST. LOUIS.

*This Certificate of Membership*

WITNESSETH, that the Citizens' Benefit Association of St. Louis, in consideration of the representations made to it in his application for membership, which is hereby made part hereof, and of the sum of —— dollars, to be paid on or before the — day of ——, in every year during the continuance of his membership in this association, and of one death-assessment of one dollar to it in hand paid; and the further sum of one dollar to be by him paid to this association within thirty days after notice served on him of each death occurring in the membership of Class B of this association, promises and agrees to and with the said —— ——, well and truly to pay, or cause to be paid, to —— ——, wife, or the legal representatives of the said —— ——, within thirty days after due notice and satisfactory evidence of the death of the said —— ——, the sum of one dollar for every surviving member of Class B of this association: *Provided, however*, that in the event of the non-payment of assessment by any member or members of said class within the prescribed time, then the residue of said benefit shall be paid to the person or persons entitled thereto under this certificate as and when collected thereafter; but in no case shall any sum be paid until so collected by assessment upon the said surviving members of said Class B as provided by

the regulations of this association, and subject always to said rules and regulations; upon the condition, however, that if the said ―― ―――― shall fail to pay any assessment or sum becoming due under this agreement, or under the rules of this association, now in force or hereafter passed, when the same becomes due, then this agreement shall be null, void, and of no effect, and all previous payments by the said ―― ―――― made shall be forfeited to this association.

In witness whereof, the said association has caused its seal to be hereto attached, and these presents to be signed by its president and secretary, at the city of St. Louis, this ―― day of ――, 18――.

――― ―――― , *President.*

――― ―――― , *Secretary.*

It is admitted that defendant has no authorization from the insurance department of the State, and that it has neither charter nor articles of incorporation under any provision of the law of the State relating to the incorporation of insurance companies.

The exercise of the right of carrying on the business of making assurance upon lives by a corporation in this State, is the assertion of a grant from the State to exercise that privilege, and is therefore the usurpation of a franchise unless it can be shown that the privilege has been granted. Acts 1874, p. 81, sects. 3, 5. It is conceded that defendant was not incorporated under the law in regard to insurance corporations, that it has no power to carry on an insurance business, and that it has complied with none of the provisions of the law specially applicable to insurance companies. If, then, it appears from the facts stated that defendant is carrying on an insurance business, and it shows no authority for the exercise of such a franchise, the State is entitled to judgment of ouster.

It is contended by respondent that the contract made by defendant with each of its members is not, properly speak-

ing, a contract of insurance; that it differs from the ordinary contract of insurance in the following respects: —

That defendant does not agree to pay a certain sum in case of the death of the assured. It does not even agree to pay a sum which may be rendered certain, as so many dollars for each member of the class to which the assured belongs. The payment is subject to a contingency that the members of the class in which the assured died shall pay their assessments. The amount to be paid is not to exceed a certain sum, but it may be diminished by a failure to collect the assessments; at the expiration of thirty days, defendant is to pay to the legal representatives of the deceased such sum as shall have been collected by assessments made upon the members of the proper class, and from time to time thereafter such further sums as shall be collected from such assessments. This money is not to be paid to the assignee of the insured. If he makes no will, and leaves no widow or children, no payment is to be made.

In these respects the contract differs from that under consideration in the case of *The Commonwealth* v. *Weatherbee*, 105 Mass. 160 (decided by the Supreme Court of Massachusetts in 1870), a case in many of its features very similar to the one before us, and the only case, so far as we are informed, in which the question as to whether organizations of this character are to be considered insurance companies, and subject to the insurance laws of the State, has been considered.

There the court held that all that is requisite to constitute a contract of insurance is the payment of consideration by the one, and the promise of the other to pay the amount of insurance upon the happening of the loss; that the fact that the object of the organization was benevolent, and not speculative, was immaterial; and that though the amount payable was not a gross sum, but a sum graduated by the number of persons in the class at the time of the death of the insured, and though there was no means pro-

vided for enforcing payment of premiums, the contract was a true contract of insurance; and that the conviction of defendant for acting as agent of an insurance company not incorporated in the Commonwealth, without first procuring a license from the insurance commissioner, ought to be sustained.

In that case the judge delivering the opinion of the court defines a contract of insurance as an agreement by which one party, for a consideration, promises to make a certain payment of money upon the destruction or injury of something in which the other party has an interest.

The text-writers generally give similar definitions; and, in the definitions of the contract cited by them from the reports, the amount to be paid on the happening of the loss is commonly spoken of as a fixed sum, or a certain sum. In *Paterson* v. *Powell*, 9 Bing. 320 (cited in the text of Bliss on Ins. 4), insurance is defined to be " a contract in which a sum is paid as a premium in consideration of the insurer's incurring the risk of paying a larger sum upon a given contingency." " Insurance," says Marshall (vol. 1, p. 1), following the civilians, whom he cites in the note, " is a contract whereby one party, in consideration of a stipulated sum, undertakes to indemnify the other against certain perils or risks to which he is exposed, or against the happening of some event; " and " the insurance of life is a contract whereby the insurer, in consideration of a certain premium, either in a gross sum or periodical payments, undertakes to pay the person for whose benefit the insurance is made a stipulated sum, or an annuity equivalent, upon the death of the person whose life is insured, whenever this shall happen, within a certain period, if the insurance be for a limited time." 2 Marsh. on Ins. 766. The law, however, is not fond of definitions, and these definitions are to be taken, perhaps, rather as statements by the learned men who make them, of the contract as they find it existing around them, than as strict definitions which contain every

essential element without which the thing cannot exist, and which exclude every thing not necessary to its being.

It is true that in the contract of insurance the sum to be paid is commonly a sum certain, or that may be rendered certain, and which, therefore, is really certain according to the well-known maxim. Thus, in the contract considered in the Massachusetts case, the amount to be paid, though uncertain at the period of insurance, is definitely fixed at the time of the loss, and that amount the company agrees to pay. In the present case, the amount which the company is to pay is fixed in the same manner, — by multiplying the number of insured in the class to which deceased belonged by the amount of the assessment; but it is provided that the insuring company shall be liable for no more of that amount than is actually collected by it, or than it can collect by the exercise of proper diligence. We do not think that this proviso renders the sum uncertain in such a sense as to make that which but for this provision would be a contract of insurance really a contract of a wholly different nature. It may be asked, If this is not a contract of insurance, what is it? In many recognized forms of insurance the actual amount to be paid is not rendered certain until the death of the insured. In this form it is rendered certain so soon as the month within which the members must pay their assessments has passed. If these assessments are not paid, the company cannot compel their payment; the member not paying merely forfeits his membership; and the fact that any such member may possibly be reinstated and pay his arrearage, and that his assessment would then be payable to the legal representatives of the deceased, does not create such an uncertainty about the sum to be paid as to destroy the character of this contract as one of insurance.

The policy of insurance in defendant's company is not assignable. But we do not think that it is of the essence of a policy of insurance that it should be capable of being thus transferred, though it is probably true that policies are

commonly made transferable with the assent of the company issuing them. In the case under consideration, the policy may be transferred by last will at the pleasure of the insured, but not otherwise.

At common law, any man might insure; but on the suggestion that commerce suffered considerably by persons in insolvent circumstances failing to make their losses good, the British Parliament, about one hundred and fifty years ago, in accordance with the existing practice of granting monopolies, gave the exclusive right of marine insurance, which alone was practised then, to two companies (Marsh. on Ins. 48); and since that date, both in England and this country, the business of insurance has been the subject of special legislative provisions. In this State, it is the policy of the government to subject insurance business to the control of the State, for the better security of policy-holders. All persons and all organizations doing an insurance business are subject to severe restrictions, onerous conditions, and the constant supervision of a department organized especially for that purpose. Wag. Stats., chap. 76. It has long been the law that no corporation shall transact any insurance business which does not deposit certain securities, and comply with all the provisions of the insurance law. Wag. Stats. 745, sect. 22. In 1872, the superintendent of insurance called the attention of the government, in his annual report, to a supposed necessity of making the insurance law in express terms applicable to individuals, and also to associations of individuals professing to be friendly associations for mutual indemnity; and subsequently an act was passed, on March 28, 1874 (Acts 1874, p. 81, sects. 3–5), amending the general insurance law, and providing that no company, no individual, and no association of individuals shall do an insurance business in Missouri unless he or they have complied with all the insurance laws of the State. The policy of the State is clearly declared by these acts.

If, as we think, the contract of defendant with its members is a contract of insurance, then it would appear that

the main, and indeed the only, object of its existence is to do an insurance business. It is not a society bound together by any other common object. Men of all races, creeds, professions, and classes may belong to it; and it can in no respect be assimilated to organizations formed for religious, benevolent, or literary purposes. Its one feature is life-insurance; its active officers are paid; and it offers a premium for bringing in new risks. The only condition of membership is a certain condition of health and probability of duration of life. The case presented is not that of an organization whose primary object is social, literary, or benevolent, and to which a feature of mutual insurance is added for the purpose of mutual aid. Such associations may exist which cannot be said to be carrying on the business of insurance, and with which we suppose it was not the intention of the Legislature to interfere.

We think that plaintiff is entitled to judgment, and it is so ordered. All the judges concur.