State *v*. Bankers' & Planters' Mutual Insurance
Association.

## Opinion delivered February 27, 1922.

Taxation—mutual benefit society.—Under Crawford & Moses'
Dig., § 9819, imposing "a tax of one hundred dollars for each
corporation doing business for profit, organized as a mutual life,
fire, accident, surety, health or other insurance company not
having a capital stock and not organized strictly for benevolent or
charitable purposes," a domestic corporation whose business con-
sists merely in soliciting and receiving applications for member-
ship, issuing policies and collecting assessments for the purpose
of paying the policies, in addition to paying the salaries of
its officers, is not doing business for profit, and therefore is not
subject to taxation.

Appeal from Conway Chancery Court; *W. E. At-
kinson*, Chancellor; affirmed.

*J. S. Utley, A. L. Rotenberry* and *J. C. Marshall*, for
appellant.

The defendant was a mutual insurance company.
52 Ark. 201; 1 N. E. (Ind.) 571; 133 S. W. 146; 46 S. E.
949; 38 L. R. A. 55; 159 S. W. 1036; 66 Iowa 26; 23 N. W.
241. The name of an association does not fix its real char-
acter. 73 Me. 299. The only charitable organizations are
those organized under the act of 1917 which provides that
such charitable and benevolent societies are not taxable
for any purpose and their funds cannot even be garnish-
ed by a creditor. 136 Ark. 149, 148 Ark. 361.

*Strait & Strait*, for appellee.

Appellee is a fraternal benefit association, and ex-
empt from the general insurance laws of the State. 104
Ark. 417.

There is a distinction between a beneficial associa-
tion and an insurance company. 13 Atl. 1112; 19 R. C. L.
1183; 26 Atl. 253; 4 Mo. App. 429; 7 Daly 168; 7 L. R.
A. (N. S.) 1154; 5 *Id.* 1141; 96 Am. Rep. 635; 64 L. R. A.
405; 72 Fed. 413; 19 C. C. A. 286; 38 L. R. A. 33; 28 Atl.
293; 159 Pa. St. 258; 101 Pa. 111.

The statute exempts organizations which are either charitable or benevolent; these words are not interchangeable. 44 Conn. 60; 26 Am. Rep. 424; 19 N. J. E. 307.

McCULLOCH, C. J.   This is an action instituted in the name of the State, on the relation of the Attorney General, against appellee, Bankers' & Planters' Mutual Insurance Association, a domestic corporation doing business as a mutual life, health and accident insurance company, to recover the franchise tax alleged to be imposed on associations of that character doing business for profit.

The facts, according to stipulation of counsel upon which the case was tried, are that the operations of appellee in its business are confined to the issuance of benefit certificates or policies to its own members in amounts not exceeding $1000, graduated according to length of membership and payable by assessments levied on the members.   The membership is divided into circles, and upon the death of a member the beneficiary under the certificate of membership is entitled to receive the amount specified therein, not exceeding the amount of an assessment on all the members in that circle.   If the amount raised by the collection of an assessment exceeds the amount of the benefits to be paid, it is held for use in the payment of subsequent death claims in that circle.   Appellee has no lodge system, the method of operation being merely to solicit and receive applications for membership, issue policies and collect assessments for the purpose of paying the policies.   The by-laws provide for a corps of officers, who are to receive salaries, the amount of which are to be fixed from time to time in the method prescribed.

The statutes, which it is claimed by the Attorney General impose a tax on an association of this kind, are as follows:

"Sec. 9805.   Each corporation organized under the laws of this State and each foreign corporation doing business in this State for profit, having no capital stock.

shall make a report in writing to the Commission annually on or before June 1, in such form as the Commission may prescribe. ' The report shall be signed and sworn to before an officer authorized to administer oaths, by the president, vice president, secretary or other chief officer of the corporation, and forwarded to the Commission. Act March 3, 1913, p. 518, § 7.'' (Crawford & Moses' Digest).

''Sec. 9806. Such reports shall contain :

''1. The name of the corporation.

''2. The location of its principal office.

''3. The names of the president, secretary, treasurer and members of the board of trustees, or directors, with postoffice addresses of each.

''4. The date of the annual election of officers.

''5. The nature of the business which such corporation is engaged in carrying out. *Id.* § 8.'' (Crawford & Moses' Digest).

''Sec. 9819. Upon the filing of the report provided for in sec. 9805, the Commission shall, on or before July 1 of each year, report to the Auditor of State, who shall on or before July 10 charge and certify to the Treasurer of State, for collection as herein provided, a tax of one hundred dollars for each corporation doing business for profit, organized as a mutual life, fire, accident, surety, health or other insurance company, not having a capital stock and not organized strictly for benevolent or charitable purposes. All foreign or domestic life, fire, accident, surety, liability, steam boiler, tornado, health or other kind of insurance companies, of whatsoever nature, doing business in this State, having an outstanding capital stock of less than five hundred thousand dollars, shall pay an annual tax of one hundred dollars, and all other such insurance companies having a capital of five hundred thousand dollars, or more, an annual tax of two hundred dollars for the privilege of doing business in this State, and all building and loan associations shall pay an annual tax to the State of twenty-five dollars for

the privilege of doing business in this State in place of tax based on the capital as herein provided. *Id.* § 9." (Crawford & Moses' Digest).

It is seen from an analysis of section 9819 that it provides for a franchise tax on three classes of insurance corporations: first, upon non-stock corporations organized as mutual insurance companies and doing business for profit; second, stock companies with a capital stock of less than $500,000, doing an insurance business, and third, stock companies having a capital stock in excess of $500,000, engaged in the insurance business. If appellee is taxable at all under this section, it must fall within the first class, and its liability for the tax turns on the question whether or not it is doing business for profit. It is confessedly a mutual insurance company, "not having a capital stock," and if the issuance of policies to its own members and the payment thereof out of assessments constitute doing business for profit, then it is taxable. We are of the opinion that that method of operation is not doing business for profit. If it was in contemplation of the lawmakers that the mere issuance of policies to members of the association constituted doing business for profit, it was entirely unnecessary to add the words, "doing business for profit," and the legislative intent could have been expressed merely by declaring that the tax should be imposed upon non-stock mutual insurance companies. The use of the term, "doing business for profit," indicates very clearly that the lawmakers did not contemplate that merely the issuance of policies to members would constitute doing business for profit.

It is not without significance that the former statute (Acts 1911, p. 67, sec. 9) which the present statute amended, did not contain the words "doing business for profit," but, on the contrary, imposed, in express words, a flat tax of $20 on all non-stock mutual insurance companies and associations doing business on the assessment plan for the protection and benefit of its members.

The purpose of the whole section was to impose a franchise tax upon insurance corporations doing business for profit, and the amount of the tax imposed on stock companies is graduated according to the amount of the capital stock. It was then within the conception of the framers of the statute that there might be non-stock companies issuing policies for profit to others than members of the association, and the purpose being to tax all associations doing business for profit, this clause was incorporated in the statute, so as to reach those associations doing business for profit but without capital stock.

The use of the word "strictly" in connection with the term, "for benevolent or charitable purposes," indicates that this was what was in the minds of the framers of the statute. It indicates that they intended that unless a mutual insurance association confined itself strictly and exclusively to the issuance of policies to its own members, it should be taxed as a corporation of that character, doing business for profit. The terms, "for benevolent or charitable purposes" was manifestly used for the purpose of distinguishing a class of associations which confine themselves to the issuance of policies to members and the payment of such policies out of contributions from the members. Mutual insurance companies operating in that exclusive method are not doing business for profit as in the case of companies issuing policies to all who apply and are found worthy, even though, in a test of reciprocal rights between a member and such an association, the principles of law governing stock insurance companies are applicable. *Sovereign Camp Woodmen of the World* v. *Newsum*, 142 Ark. 132.

The fact that the officers of appellee association receive salaries must be eliminated from the consideration in determining whether or not the association is doing business for profit. The active business of all organizations, even those devoted to charity and benevolence, is generally conducted by salaried officers, and the fact

that they do receive salaries for their services does not change the character of the association.

The term, "doing business for profit," as used in the statute, refers to the operation of the corporation itself—whether it is doing business for profit—and has no reference to the remuneration received by its officers.

In order to impose liability for tax it must be found that the character of business sought to be taxed falls, either expressly or by fair implication, within the language used. It does not appear to us that the language of the statute includes a corporation doing business according to the method pursued by appellee.

Our attention has been directed to a recent decision of the United States Circuit Court of Appeals of this circuit in the case of *Bankers' & Planters' Mutual Insurance Co.* v. *Walker,* 279 Fed. 53, in which the court held that the present appellee was subject to taxation under section 504 of the Federal war revenue tax law of 1917, which imposed a percentage tax on "each $100, or fractional part thereof, of the amount for which any life is insured under any policy of insurance, or other instrument, by whatever name the same is called." The court decided in that case that the statute imposed this tax on all kinds of insurance business, whether for profit or otherwise. The court also held that appellee's business did not fall within certain exceptions prescribed in the statute for the reason that the descriptive language used in this statute did not include the kind of business in which appellee was engaged. The decision has no application to the present case.

Decree affirmed.