GALLEGLY *v.* AMERICAN INSURANCE UNION.

Opinion delivered September 30, 1929.

*Oliver & Oliver,* for appellant.

*Caraway, Baker & Gautney,* for appellee.

BUTLER, J.   This is a suit on an insurance policy issued to D. N. Thomas by appellee.   Sophie Thomas, wife of assured and mother of appellants, was the beneficiary named in the policy.   She died at an undisclosed date, and the assured died on September 20, 1927.   Appellants are adults, and their mother and father died intestate, leaving no debts.

The trial was before the court sitting as a jury, and a judgment was rendered finding "the issues of law and fact for the defendants," and dismissing the suit of appellants, who, in apt time, filed their motion for a new trial, in which the following assignments of error were made:   "(1)   That the findings of the court are contrary to the evidence.   (2)   That the findings of the court are contrary to the law. (3)   That the findings of the

court are contrary to the law and the evidence. (4) That the court erred in its holding that the defendant was not bound, under the terms of its contract, to advance or pay for him, Thomas, the one month's premium for Octo ber, 1926, being the month for which defendant attempted to forfeit the contract of insurance sued on. (5) That the court erred in its holding that the defendant was not compelled to use the reserve that had accumulated upon the contract sued on in order to prevent a forfeiture, rather than to declare a forfeiture, and thus obtain the reserve for its own use.''

The motion was overruled, hence this appeal.

Appellee first insists that appellants were not entitled to bring or maintain this action because there is no provision either in the certificate or by-laws that will permit a relative to sue for an alleged claim. The answer to this is that they are not suing as relatives of the assured, but as the heirs at law of the beneficiary, and as such are entitled to whatever benefits might have accrued to their ancestor, and the fact that there is no declaration in the by-laws relating to the heirs or relatives of a deceased beneficiary cannot diminish or change their legal status or their rights thereunder, and it therefore follows that they are proper parties plaintiff in this case.

The principal defense of the appellee (defendant below) was and is that the policy, the basis of this action, was forfeited for nonpayment of the monthly premium falling due October 1, 1926.

It is admitted by the appellant that, under the constitution and by-laws of appellee, this, if true, is a perfect defense, but they say such was not in fact the case. The facts relevant to the material question in issue are undisputed, and such as are necessary for the decision of the case will be stated in this opinion.

The assured was a member of, and held a certificate of insurance on his life in favor of the beneficiary hereinbefore named in, some kind of insurance company or association known as ''The Home Protective Associa-

tion." In the aforesaid certificate he was insured for the sum of $1,000, for which he paid a monthly premium of $1.44. He held this certificate for an undisclosed period of years, and paid his premiums promptly on the first day of each month until the year 1919, when the association surrendered its assets to appellee, which took over its membership and agreed to pay the claims then existing, and such death claims of the membership of the Home Protective Association as might thereafter accrue. It was also agreed, in what appellee calls the "merger agreement" of the two insurance companies, that appellee might and should increase the premiums due each month to "a sum sufficient to meet the costs of his insurance on the basis of the American experience table of mortality, with interest at 4 per cent., or upon such other standard table of mortality and plan as may be deemed necessary by the national board of the American Insurance Union, to meet the *costs of his insurance.*"

The constitution and by-laws of the appellee provided for its creation and operation as a fraternal benefit society, with a central organization and local "chapters," and for initiation, ritualistic work, etc., such as are common in organizations of its kind; these chapters to have chaplains and various other officers, one of whom was called the "cashier," the idea being that, in addition to the insurance benefit, other indirect but highly important benefits would accrue to the membership from the fraternal spirit inaugurated and fostered by the local chapters, the frequent meetings, the ritualistic work, the visits of the brethren in sickness, their charity in distress, and the promoting and cementing of friendship by frequent association.

In part, to provide funds for this important and laudable portion of the activities and benefactions of appellee, § 907 of the by-laws provided that: "Beginning with the date of his admission, each life benefit member shall pay to the cashier of his chapter, in addition to his monthly premium, such sum as chapter dues

as *his chapter* may prescribe, which shall be not less than 15 cents a month, nor more than 25 cents" * * *.

Such was the agreement under which assured became a member of appellee Union, such were appellee's professed aims, and such the manner in which it proposed to function. Beginning with January 1, 1922, insured's dues were increased from $1.44 per month to $6.95 per month, and with the beginning of each year thereafter the monthly dues were increased 75 cents, so that on January 1, 1926, his dues reached the sum of $9.95 a month, and continued so down to and including the date of the alleged forfeiture, October 1, 1926. The assured paid each month his premiums down to and including September 1, 1926. About a year prior to the last mentioned date he suffered a paralytic stroke, and never left his bed until his death, his daughter, Mrs. Gallegly, one of the appellants, attending to his wants and paying his monthly insurance premiums. When it became time to remit for the November premium, Mrs. Gallegly discovered that she had failed to send in the October premium, and on November 4 remitted for both the October and November premiums, with an explanation. The remittance was returned by the appellee, with certain blanks for reinstatement, including a certificate of "good health" to be made as a prerequisite to a consideration of the application. As the assured was and had been a helpless and incurable invalid for more than a year, the certificate could not be made, and, after some time, Mrs. Gallegly and assured were advised by appellee that the policy had been forfeited for the failure to pay the October premium within the 20 days of grace. Tender was made for four months premiums in advance, which was refused, and no other premiums were paid. Assured died September 20, 1927.

Beginning with January 1, 1922, and continuing each month until and including September 1, 1926, appellee Union exacted of assured, and he paid, in addition to the premiums on his policy, a monthly fee of 25 cents

as "chapter dues," the total of which amounted on October 1, 1926, to a sum in excess of the premium due on that date. As, under the merger agreement, which has been quoted, the "costs of the insurance" were met by the payment of the monthly premiums, the only legitimate purpose for which the chapter dues could have been collected was to provide for the needs of the chapter in its ritualistic work, and to aid in its fraternal activities. But it appears that this was not the real motive for the collection of this sum, nor the uses to which it was devoted. There were 12,000 members taken over by appellee from the Home Protective Association, and 38,000 from other associations which appellee absorbed. The reasonable inference is that each of these were required to and did pay 25 cents each month as chapter fees, all of which totaled each month the sum of $12,500. Now, neither assured, Thomas, nor any other of the brethren acquired from the various associations taken over by appellee, ever made application to and none were ever initiated into any chapter. Assured lived in or near the town of Corning, Arkansas. There was never any chapter of appellee at that place. When the assured and the 38,000 others became members of the .appellee Union, they were assessed chapter dues as members of chapter 2,200, the domicile of which was said to have been at Columbus, Ohio, but into which neither assured nor the others were ever initiated or attended, because it *never met.* It never had a meeting during its entire alleged existence, and we are warranted in concluding that it never did have any existence, but was as "insubstantial" as Prospero's airy pageant, "such stuff as dreams are made on," with this marked difference, that nothing ever comes of dreams, while $12,500 monthly came of this out of the policyholders, in excess of the "cost of insurance."

In the case of *Mutual Aid Union* v. *Perdue,* 162 Ark. 551, 258 S. W. 375, it was held that where, under the by-laws, assessments are required to be levied by the board of directors, the levy of such assessments by the secre-

tary is without authority, and a failure to pay an' assessment so levied did not work a forfeiture of the policy. Applying the rule announced in that case to the facts of the case at bar, it is clear that the exaction of the chapter dues was without authority. Their payment by assured and his agents cannot be said to have been voluntary, because it was made without a full knowledge of the fact, and under coercion implicit in the very demand. Because of this, the money so demanded and paid remained the property of the assured, and on October 1, 1926, amounted to a sum greater than the premium due. Under such circumstances the insurer should have applied the funds in its hands, wrongfully collected from the insured, to the payment of the premium, and thus avoided a forfeiture, and, having failed in this duty, the law makes the application, and, doing so in this case, it follows that the premium due October 1, 1926, had been paid before its due date, and there was no forfeiture. We think the conclusion reached consonant with reason, and has the support of authority. "It is inequitable and against the policy of the law to permit a society to forfeit a contract of insurance for nonpayment of an assessment, when it has in its possession the money of the member to an amount covering the assessment, and has the power to apply the money as an assessment." Niblack, Accident Ins. and Benefit Societies, 2 ed., § 271.

In the case of *Knight* v. *Supreme Council, etc.*, 6 N. Y. Sup. 427, the court said:

· "The defendant had already in its hands moneys illegally exacted from the deceased which it ought to have applied to the extinguishment of the assessment. * * * Knight became a member of the order on July 28, 1884. He was not liable for any assessment for any loss prior thereto. Yet it is shown that he was included in and paid an assessment of July 22, 1884, under circumstances which would show that it was not a voluntary payment. * * * So long as there remained in the treasury of the defendant sufficient funds of the deceased

with which to pay the assessment in question, no defense of forfeiture for nonpayment was available to it.''

The issue relative to the illegal demand and of the payment of such for chapter dues, while not raised by the pleadings originally filed, was raised by the evidence introduced, to which no exception was made, and therefore the complaint will be treated as amended to conform to the proof.

It will be noted that the learned trial judge made no specific findings of fact or declarations of law, and for that and the further reason that, from an inspection of the record, a question of law only was involved, we think the second assignment of error was as definite as the judgment would permit, and sufficient to bring the entire case before this court on review.

The payment of the premiums on the several monthly due dates after October 1, 1926, were not made, but of this appellee cannot complain, for, having refused to accept same when tendered, and declaring the policy forfeited, any tender thereafter would have been futile. However, the dues for the month of November and December, 1926, at $9.95 each, and those for January to and including September, 1927, at $10.70 each, are now due appellee. .

From an inspection of the constitution and by-laws of the company we have concluded that it is a ''fraternal benefit society,'' and not subject to the penalties prescribed by § 6155, C. & M. Digest, for failure to pay claims due by it, nor liable for an attorney's fee in this case.

In view of the conclusions reached, the judgment of the trial court must be vacated, and the facts on the question we deem important and decisive of this case having been fully developed and undisputed, the clerk of this court will ascertain the amount due appellants from the amount named in the policy, plus $4.30 balance of chapter dues remaining in hands of appellee, deducting November and December dues, 1926, at $9.95 each, and

monthly dues from and including January to and including September, 1927, each for the sum of $10.70, and will enter judgment for the balance, with 6 per cent. interest from September 20, 1927, until paid.