MODERN WOODMEN OF AMERICA *v.* STATE, EX REL. ATTORNEY GENERAL.

4-4413

Opinion delivered January 18, 1937.

*George G. Perrin, George H. McDonald, Nelson C. Pratt* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Carl E. Bailey*, Attorney General, *Ed I. McKinley, Jr., John M. Wheeler* and *Creekmore Wallace*, for appellee.

*Donham & Fulk* and *Cockrill, Armistead & Rector, amici curiae.*

McHANEY, J. This suit was instituted by the state of Arkansas on relation of her Attorney General, through special counsel, to collect from appellant a large sum of money which it is claimed is due the state for taxes on premiums collected by it on policies issued in this state from 1908 to the time of filing this action. Appellant defended on a number of grounds, among others that it is a fraternal beneficiary society and, being such, that the statute levying a tax on premiums of foreign insurance companies, collected on business done in this state, specifically exempts from its provisions such companies, and that, therefore, it is not liable to pay such tax. The trial court found from the pleadings and evidence adduced that appellant is in fact a life insurance company and not a fraternal beneficiary society, and that it is liable to the state in taxes in the total sum of $153,507.55, for which amount judgment was awarded with interest. This appeal is from that judgment.

Appellant is a foreign corporation incorporated in 1884 under the laws of the state of Illinois, which is the state of its domicile and where it has its principal office and place of business as a fraternal beneficiary society. In the year 1908, appellant was licensed to do business in the state of Arkansas as a fraternal beneficiary society, and, during all the twenty-eight years from then to now, it has annually renewed its license to transact its business in this state as a fraternal beneficiary society without any question having been raised at any time as to its status as such a society.

The laws of Illinois, governing the organization and operation of such societies, are quite similar to, if not identical with, our laws. The act of June 18, 1893, § 1, as amended, and as found in Smith's Statutes of Illinois, page 1714, defines such a society to be one that is organized "for the sole benefit of its members and their bene-

ficiaries, and not for profit." They "shall have a lodge system, with ritualistic form of work and representative form of government, and may make provisions for the payment of benefits in case of disability and death, or of either, resulting from either disease, accident or old age of its members." Members are not allowed to vote by proxy. They may create and maintain a reserve which cannot be used for expenses. They may grant to the members such extended and paid-up protection or such withdrawal equities as shall not exceed in value the portion of the reserve to the credit of such member. Our first general act for the regulation of such societies was act 186 of 1899, entitled, "An Act to define and regulate fraternal beneficiary orders or societies." Section 1 of said act defines them in this language: "That every incorporated association, order or society, doing business in this state on the lodge system, with ritualistic form of work and representative form of government, for the purpose of making provision for the payment of benefits in case of death, sickness, temporary or permanent physical disability, either as the result of disease, accident or old age, formed and organized for the benefit of its members and their beneficiaries, be and the same is hereby declared to be a 'fraternal beneficiary order, society, or association,' and such order, society or association paying death benefits may also create, maintain, apply or disburse among its membership a reserve or emergency fund as may be provided in its constitution or by-laws; provided, however, that no profit or gain shall be added to the payments made by a member."

Section 2 provides that they shall be governed by this act, and "shall be exempt from the provisions of all insurance laws of this state, and no law hereafter passed shall apply to said societies, orders or associations, unless it be expressly designated therein."

The above provisions of § 1 of the act of 1899, defining fraternal beneficiary societies has never been restricted by subsequent legislation, but has been enlarged and broadened by subsequent acts, notably by act 462 of the Acts of 1917, same being digested as § 6068 *et seq.*

of Crawford & Moses' Digest, commonly referred to as the New York Conference Act, and act 237 of the Acts of 1927, page 800, and act 245 of 1927, page 836, and the powers of such societies have been greatly enlarged. The act of 1917, above referred to, is very comprehensive and contains 32 sections covering practically every phase of the operation of such societies, and act 237 of 1927, above referred to, is very comprehensive and contains 26 sections. By § 21 of the latter act it is provided that "all corporations, domestic or foreign, now or hereafter doing business in this state, shall be exempt from all provisions of this act unless said corporation, by action of its board of directors or other properly constituted body, elects to have said corporation come under the provisions hereof."

A similar provision is found in the act of 1917, above referred to, § 4, being 6071, Crawford & Moses' Digest, to that contained in § 2 of the act of 1899, as follows: "Except as herein provided, such society shall be governed by this act, and shall be exempt from all provisions of the insurance laws of this state, not only in governmental relations with the state, but for every other purpose, and no law hereafter enacted shall apply to them unless they be expressly designated therein."

We agree with counsel for appellee that there is nothing very complicated about this lawsuit and that, when the question of whether or not this appellant is or is not a fraternal beneficiary society, within the meaning of our statutes, is determined, then this lawsuit is settled. It is conceded by counsel for appellee that there was a time when appellant was a fraternal beneficiary society. When asked in oral argument at what point in time it ceased to be such and became an old-line life insurance company, one of counsel answered that it ceased to be such when it ceased to make post-mortem assessments for the payment of death benefits and made ante-mortem assessments. Another of counsel answered that it ceased to be such when post-mortem assessments were abandoned and it began operating on a level premium basis. If counsel for appellee are mistaken in their contention, that appel-

462

lant ceased to be such a society within the meaning of the laws of this state, then their whole case falls.

Section 6069 of Crawford & Moses' Digest provides that any society having a supreme governing body and subordinate lodges, "into which members shall be elected, initiated and admitted in accordance with its constitution, laws, rules, regulations and prescribed ritualistic ceremonies, which subordinate lodges or branches shall be required by the laws of such society to hold regular or stated meetings at least one in each month, shall be deemed to be operating on the lodge system." The by-laws of appellant provide for the very things this statute requires and the proof is undisputed that appellant's lodges meet regularly. But if it were shown here, as it appears to have been in a companion case this day decided, that certain subordinate lodges had failed to meet as required by the constitution and by-laws of the order, such failure or neglect would not affect or alter the fraternal character of the association or order itself. Section 6070, Crawford & Moses' Digest, defines what is a representative form of government and states that it shall be deemed to have such when it shall so provide in its constitution and by-laws with the provision that the elective members to the supreme governing body shall constitute a majority thereof with not less than two-thirds of the votes nor less than the number required to amend its constitution and laws and that the meetings of the supreme governing body and the election of officers and delegates shall be held as often as once in four years, and that they shall not vote by proxy. This section is literally complied with in appellant's by-laws and in its articles of association. It is admitted that appellant has no capital stock. The statute says that such a society must be "carried on solely for the mutual benefit of its members and for their beneficiaries and not for profit." It seems to be appellee's main contention that because of the character of the policies issued by this appellant, "such as whole life certificates, ordinary life policies, term insurance to the age of 60 years, term insurance to the age of 50 years, 20-pay life certificates, term to 45

years of age certificates, income policies, endowment policies, to the age of 30 (all such contracts being profit-making contracts),'' appellant is and must be an old-line life insurance company although it has a ritual, lodges, representative form of government, and that it is not a fraternal beneficiary society within the meaning of our statutes and is not entitled to the exemption from the taxing statutes applicable to foreign insurance corporations. It is also contended that the fact that appellant pays its officers and agents substantial salaries or, compensation by way of commissions shows that it is doing business for profit. As to the latter issue, we have decided the question adversely to appellee's contention. In the case of State v. Bankers' & Planters' Mutual Life Association, 152 Ark. 182, 238 S. W. 17, the court said: ''The fact that the officers of appellee association receive salaries must be eliminated from the consideration in determining whether or not the association is doing business for profit. The active business of all organizations, even those devoted to charity and benevolence, is generally conducted by salaried officers, and the fact that they do receive salaries for their services does not change the character of the association.

''The term 'doing business for profit' as used in the statute, refers to the operation of the corporation itself —whether it is doing business for profit—and has no reference to the remuneration received by its officers.''

As to the former contention, that the character of policies issued determines its status, a sufficient answer is that our statute authorizes appellant to do so either expressly or by implication. Section 6072 of Crawford & Moses' Digest provides that ''Every society transacting business under this act shall provide for the payment of death benefits, and may provide for the payment of benefits in case of temporary or permanent physical disability, either as a result of disease, accident or old age. * * *.'' It will be noticed that it is made mandatory upon every such society to provide for death benefits and that it is made optional with such societies as to whether they shall issue disability benefits. It is further provided that

"Such society shall have the power to give a member, when permanently disabled or on attaining the age of 70, all or such portion of the face value of his certificate as .the laws of the society may provide; provided, that nothing in this act contained shall be so construed as to prevent the issuing of benefit certificates for the terms of years less than the whole of life which are payable upon the death or disability of the member occurring within the term for which the benefit certificate may be issued." By § 6073, Crawford & Moses' Digest, it is further provided: "Any society which shall show by the annual valuation hereinafter provided for that it is accumulating and maintaining a reserve not lower than the usual reserve computed by the American Experience Table and 4 per cent. interest, may grant to its members extended and paid-up protection, or such withdrawal equities as its constitution and laws may provide; provided, that such grants shall in no case exceed in value the portion of the reserves to the credit of such members to whom they are made." So, it will be seen that appellant is not exceeding its powers by issuing the character of policies it does issue nor can it be said to be engaged in operating for profit because of the character of policies it issues nor can it be said that because it has built up a reserve so as to make it solvent takes away its character as a fraternal beneficiary society. The statute above quoted requires it to maintain a legal reserve as therein required. It is also suggested that because appellant maintains a "contingency reserve" or an emergency fund of considerable proportions, that this is evidence that it is doing business for profit. But not so. Section 6078 of our statutes provides therefor. It says: "Any society may create, maintain, invest, disburse and apply an emergency, surplus or other similar fund in accordance with its laws. Unless otherwise provided in the contract such fund shall be held, invested and disbursed for the use and benefit of the society, and no member or beneficiary shall have or acquire individual rights therein or become entitled to any apportionment or the surrender of any part thereof, except as pro-

vided in § 6073. The funds from which benefits shall be paid and the funds from which the expenses of the society shall be defrayed shall be derived from periodical or other payments by the members of the society and accretions of said funds; provided, that no society shall hereafter be incorporated which does not provide for stated periodical contributions sufficient to provide for meeting the mortuary obligations contracted, when valued upon the basis of the National Fraternal Congress table of mortality as adopted by the National Fraternal Congress, August 23, 1899, or any higher standard, with interest assumption not more than four per cent. per annum, nor shall any such society be admitted to transact business in this state which does not provide for stated periodical contributions sufficient to provide for meeting the mortuary obligations contracted when valued upon one of the bases named in § 6102 and applicable thereunder to such society. No society, domestic or foreign, shall hereafter be incorporated or admitted to write or accept members for permanent disability benefits except upon tables based upon reliable experience with an interest assumption not higher than four per cent.'' This statute expressly authorizes appellant to maintain an emergency fund. The object of the Legislature was to require of appellant, and other fraternal beneficiary societies, the doing of those things necessary to put them upon a sound financial basis. In other words, to require them to become solvent and to stay solvent. It would be an anomalous situation that the state should require appellant to do these things required by statute or to authorize their doing, and then to say because they have done so, they have ceased to be a fraternal beneficiary society and have become an old-line insurance company subject to the premium tax.

Section 6077, Crawford & Moses' Digest, as amended by act 493 of 1921, § 17, authorizes such societies to do business in this state, to have separate classes of membership, with separate forms of contract and that the assets or mortuary collections from the members of each class respectively shall be maintained separately for such

class "and the required reserve of such accumulation of such class, if contract therefor provide for such fund, shall be set apart and be held specifically and separately for the use and benefit of such particular class, and shall not thereafter be mingled with the assets or mortuary collections of any other class of the society." It is said that such society violates this requirement of the statute and that this ought to deprive them of their status as a fraternal beneficiary society. Conceding that appellant is failing to comply literally with this provision of law, we cannot agree that such violation would have the effect contended for. Appellant has filed its annual report as required by law with the insurance commissioner of this state annually during all of the years it has done business in this state since 1908, and it has shown in detail as will be seen from an examination of one of its reports, the nature of the business it transacts, the kinds of beneficiary certificates it issues, the reserve maintained and how they are maintained, and if the insurance commissioner had considered that appellant was violating this provision of the statute, he has the authority under the statute to require it to comply with this provision as well as other provisions of the statute, and if it fails to do so, he has the power, subject to review by the courts, to deny it authority to continue to do business in this state. Not having done so at any time, we conclude that appellant has substantially, if not literally, complied with all of the provisions of our laws. This would appear to be a substantial compliance with the law since it is undisputed that appellant has at all times maintained a reserve sufficient to protect all classes of insurance and all character of policies which it writes.

The position we have assumed in the decision in this case is supported by the decision of the three-judge court of the United States, for the Southern district of Iowa, Central division, in *Sovereign Camp of the Woodmen of the World, a Fraternal Beneficiary Association, Corporation,* v. *Ray Murphy, Commissioner of Insurance of the State of Iowa, et al.,* (D. C.) 17 Fed. Supp. 650. That was a suit to enjoin the Commissioner of Insurance of Iowa,

among other things, from attempting to collect the tax, required by the statute of that state, of foreign insurance companies based upon a percentage of the premiums received from their insurance business done in the state, but which exempts fraternal beneficiary associations. The court denied a motion to dismiss and granted a temporary injunction as prayed. This well-considered opinion answers every contention made by appellee in this case. It was there said: "We are satisfied that the contracts shown to have been issued in Iowa were drawn in the honest belief that they were authorized by the Iowa statute and that they contain no options which were expressly prohibited. They come generally within the broad provisions for 'extended benefits,' 'paid-up benefits' and 'withdrawal equities' mentioned in the Iowa statute and their issuance did not deprive the plaintiff of its fraternal character." Again it is said: "The testimony presented for defendants convinces that many of the reasons which originally justified exempting fraternals from taxation no longer apply to such great financial institutions as the plaintiff has grown to be. But such considerations are for the Legislature. The Legislature has sanctioned the changes in the methods of the fraternals which have made their growth possible but has kept intact and without change their classifications as exempt corporations."

We agree with Judge WOODROUGH's reasoning as shown in the statements above quoted. We agree with appellee that appellant has in a large measure departed from its original purpose of fraternalism and small benefits to that of small fraternalism and large benefits and has taken on many characteristics of an old-line life insurance company. But it has substantially complied with the statutes of this state, and whether it may continue to operate as a fraternal beneficiary society in this state presents a question addressed to the General Assembly and not to us. Appellee relies very strongly upon our own case of *Locomotive Engineers' Mutual Life & Accident Insurance Association* v. *Vandergriff*, 192 Ark. 244, 91 S. W. (2d) 271. The records of the Insurance Commissioner, as stated in argument and not denied, do not show

that the society in that case was authorized to do business in this state. There was nothing in the record to show its character as a fraternal beneficiary association except the certificate it issued and a section of the by-laws, and the majority held in that case that this was insufficient to establish its status as a fraternal beneficiary society. Therefore, the decision was based upon the nature of the contract itself which was similar to those issued by old-line insurance companies. The status of the company as a fraternal insurance company within the meaning of our law was not an issue in that case, nor could it have been, since it admitted that it had no agent in the state, nor was it shown by it that it had complied with the laws of this state with reference to fraternal beneficiary societies. We think it has no bearing upon the case at bar and is not decisive of any issue involved here. Here, not only were the articles of incorporation, the constitution and the by-laws and the several beneficiary certificates issued by it introduced in evidence, which reflect its status as a fraternal beneficiary society, conformably to the laws of this state, but testimony was introduced which, in our judgment, is conclusive of the fact that it is a fraternal beneficiary society within the provisions of our statutes, doing business as such under a certificate annually issued by the Insurance Commissioner of this state during all of these years.

Counsel for appellee also rely upon the case of *Modern Order of Praetorians* v. *Bloom,* 69 Okla. 219, 171 Pac. 917, but we think that case has been greatly impaired, if not overruled, in the more recent case of *Supreme Forest Woodmen Circle* v. *Stella Bowen,** decided by the Supreme Court of Oklahoma, which latter case supports appellant in its contention that it is in fact a fraternal beneficiary society. With reference to the Bloom case, the court used this language: 'The dicta expressed in the case of the *Modern Order of Praetorians* v. *Bloom, supra,* so far as it may be said to be contrary to the views herein expressed, is disapproved.'' Many other interesting questions are raised by counsel for appellant in the

*71 Pac. (2d) 480.

briefs filed herein, but what we have said heretofore makes it unnecessary to consider them.

The decree of the chancery court will be reversed, and the cause dismissed.

HUMPHREYS and MEHAFFY, JJ., dissent.

HUMPHREYS, J., (dissenting). The effect of the majority opinion of the court in this case and in the cases of the Maccabees and Modern Woodmen of America and like insurance corporations is to permit them to do practically all kinds of life, disability, and accident insurance in this state without paying 2½ per cent. to the state on the gross premiums collected on the policies.

The statutes of this state exempt fraternal beneficiary societies or orders from the payment of the 2½ per cent. on gross premiums collected by those who write insurance without profit or gain, and who do their business under the lodge system, with ritualistic form of work and representative form of government. Act No. 186, p. 328 of 1899; Act No. 462, March 28, 1917, p. 2087; Act No. 237 of 1927, p. 800.

Fraternal beneficiary societies of non-profit benefit associations, as sometimes called, are exempted from the payment of the tax on the theory that their purposes are charitable and helpful to their members, not only in a social way, but that they might obtain insurance on a non-profit basis as an incident to their ritualistic fraternal work. I think this the paramount intention of the legislature running through all these statutes and that the various legislatures, in passing the acts, did not intend to exempt any kind of an organization issuing profit bearing insurance policies or certificates from paying a tax on the premiums collected to the state for the privilege of doing business in the state.

The question for determination on appeal in this case and the two companion cases (*Maccabees* v. *State*, 103 S. W. (2d) 46; *Woman's Benefit Asso.* v. *State*, 103 S. W. (2d) 461) now before us is whether appellants are engaged in a general life insurance business in this state for profit to the respective corporations or the members thereof. If so, they are not exempt from the tax imposed on the premiums collected by them. If, however,

they are not engaged in the general insurance business for profit, they are exempt from the tax. The test necessarily lies in the character and kind of business they are and have been doing in this state. This court said so in the case of *Locomotive Engineers Mutual Life & Accident Insurance Association* v. *Vandergriff,* 192 Ark. 244, 91 S. W. (2d) 271, rendered less than a year ago. The language used in that case to which I refer is as follows:

"It is finally insisted that the court erred in assessing a penalty against the appellant and in allowing an attorney's fee to be charged against it. This contention is based upon §§ 6068, 6069 and 6071, Crawford & Moses' Digest, as construed by this court in *United Order of Good Samaritans* v. *Meekins,* 155 Ark. 407, 244 S. W. 439, 28 A. L. R. 89, and *Gallagley, et al,* v. *American Ins. Union,* 180 Ark. 4, 20 S. W. (2d) 642. Appellant contends that it is a fraternal benefit society within the meaning of the sections of the digest and the decisions cited. It is true, the appellant so designates itself in its by-laws, but the business it transacts is essentially different from that transacted by a fraternal benefit society. In societies of that character the insurance of its members is paid by dues or assessments while the contract here involved has all the earmarks of those issued by old line insurance companies; it is styled an 'ordinary life' policy; the premiums and reserve are based on the American Experience Tables and the premiums are fixed and payable as in an ordinary life policy. In determining whether the insurer is a fraternal society or an insurance company, the test is not the mere form of the organization, but the business in which it is actually engaged. In *State ex rel.* v. *Stout,* 17 Tenn. App. 10, 65 S. W. (2d) 827, the court said: 'Broadly speaking, it may be said that when a company, society, or association, either voluntary or incorporated, and whether known as a relief, benevolent, or benefit society, or by some similar name, contracts for a consideration to pay a sum of money upon the happening of a certain contingency, and the prevalent purpose and nature of the

organization is that of insurance, it will be regarded as an insurance company and its contracts as insurance contracts, and this without regard to the manner or mode of the payment of the consideration, or of the loss or benefit.' This seems to be the rule approved by the weight of authority. *Farmer* v. *State,* 69 Tex. 561, 7 S. W. 220; *Filley* v. *Illinois L. Ins. Co.,* 93 Kan. 193, 144 P. 257, L. R. A. 1915D, 134.

"Couch Encyc. of Insurance Law, vol. 1, § 253, p. 602, lays down the following as a text: 'But, as a matter of fact, the question of the nature of the society, with respect to whether or not its contracts shall be regarded as those of an assessment or of an old line company, is generally regarded as largely controlled by determining whether or not it operates on the assessment or co-operative plan, or on a fixed benefit and premium basis.' See, also, *Marcus* v. *Heralds of Liberty,* 241 Pa. 429, 88 Atl. 678; *Jones* v. *Commonwealth Cas. Co.,* 255 Pa. 566, 100 Atl. 450; *Modern Order, etc.,* v. *Bloom,* 69 Okla. 219, 171 Pac. 917; *Block* v. *Valley, etc., Asso.,* 52 Ark. 201, 12 S. W. 477, 20 Am. St. Rep. 166; *State ex rel. Beach* v. *Citizens, etc., Asso.,* 6 Mo. App. 163; *Ragsdale* v. *Brotherhood of Railroad Trainmen,* 229 Mo. App. 545, 80 S. W. (2d) 272. We see no circumstances tending to establish the contention of appellant as to the nature of the contract except that it calls itself a fraternal society and applies to the insured the designation of 'brother' when denying liability for a disability it had insured him against.''

The test announced in this case, in my humble judgment, is sound and ought to rule the three instant cases, because the facts reflected by the record in the instant cases bring them within the rule. All the policies or certificates introduced in the record are, in form and substance, the same kind of profit bearing policies written by old line mutual insurance companies. Great reserves and great surpluses, running into millions of dollars, have been built up out of the insurance business conducted by each. They solicit insurance through paid agents just as old line companies do. They write all kinds of insurance policies, barring none. They solicit

insurance from all insurable persons, be they members of the associations or not. The policies they write are not canceled for failure to attend lodge meetings or to participate in the rituals. The failure to pay fixed or flat premiums is the only thing that works a forfeiture of their policies. Their insurance business has grown to great proportions. As I read the record, the lodge and ritualistic work is a mere incident to the insurance business they do; whereas, in their early beginnings, when they were fraternals in fact, instead of in name only, it was otherwise.

Under my interpretation of the insurance statutes, this appellant and the appellants in the two companion cases, owe the state $239,895.33, which amounts have gone directly or indirectly to build up enormous reserves and surpluses far beyond the amounts necessary to meet all their obligations existing or contingent and which amounts have been accumulated out of profits for the benefit of the societies or their numbers.

If the majority are correct in their interpretation of the statutes, the statutes, as written, discriminate between foreign insurers doing exactly the same kind and character of business in this state. This fortifies me in the correctness of my view, because my interpretation leaves no room for complaint against the statutes on account of arbitrary discriminations in them.

It is as clear as the noonday sun to me, gleaned from the records of the facts in these three cases, that appellant and the appellants in the two companion cases are doing a general mutual insurance business, covering life, disability, and accident insurance, in this state for profit in open violation of the statutes authorizing them to do only a non-profit life, disability, and accident insurance business incident to their ritualistic lodge work. For the reasons assigned, I am impelled to dissent from the construction placed upon our insurance statutes, so far as they relate to the issues involved, by my associates, and to say to them that I think they have and are departing from the test we announced in the Vandergriff case, *supra,* by which to distinguish fraternal bene-

ficiary societies from old line mutual insurance companies.

In effect, we said, in that case, "Ye shall know them by their fruits." Matthew VII:16.