MARY E. STEELE, Respondent, *v.* THE ST. LOUIS MUTUAL LIFE INSURANCE COMPANY, Appellant.

### December 28, 1876.

1. In an action on a life insurance policy which contained a provision that, in case of failure to pay the annual premiums on the days mentioned in the policy, the policy should cease and determine, and the insurance company should not be liable; where the insurer issued a circular declaring that it had made its policies now in force non-forfeiting, by extending the full amount of the insurance over such period of time as the premium reserve or the value of the policy would pay for, applied as a single premium for temporary insurance; and where these circulars were, in various ways, distributed among policy-holders and others, and kept for distribution upon the counter over which the insured paid the premiums; *held*, that these facts were sufficient to sustain a finding by the jury that the insured had notice of the contents of such circular, and was thereby induced to omit the payment of the last premium due on the policy, and that if the insured had notice of the contents of the circular, and acted thereupon, the insurer was estopped to set up the non-payment of the last premium, and the provision of the policy relating to non-payment and forfeiture, as a defense to the action.

2. An erroneous instruction, given at the instance of respondent, which works an injury to him, but not to appellant, is not a ground for a reversal.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*Davis & Smith*, attorneys for appellant, cited: Howard *v.* Cashon, 33 Mo. 118; Heyneman *v.* Garneau, 33 Mo.

565 ; Morris *v.* Barnes, 35 Mo. 412 ; Baker *v.* Stonebraker, 36 Mo. 338 ; Nelson *v.* Boland, 37 Mo. 432 ; Ruse *v.* Mutual Benefit Life Ins. Co., 23 N. Y. 516 ; Wheelton *v.* Hardisty, 2 Big. Life Ins. Cas. 469 ; Bunce *v.* Beck, 43 Mo. 266 ; Hennig *v.* United States Ins. Co., 47 Mo. 425.

*Leonard Wilcox*, for respondent, cited : 1 Ph. on Ev., sec. 612 ; 1 Greenl. on Ev., 12th ed., secs. 13 *a*, 48 ; Stark. on Ev., 9th ed., secs. 78, 81, 742, 750, 753, 845 ; Burrill on Cir. Ev., ed. 1856, pp. 31, 36, 37 ; Ham *v.* Barrett, 28 Mo. 388 ; 1 Smith's Ld. Cas., 7th Am. ed., 866 ; 2 Smith's Ld. Cas., 7th Am. ed., 718, 720, and note ; Graff *v.* R. R. Co., 31 Penn. 497 ; Wontner *v.* Shairp, 4 C. B. 408, 441 ; Ruse *v.* Ins. Co., 24 N. Y. 654 ; Bedford *v.* Bagshaw, 4 H. & N. 548 ; 1 Greenl. on Ev., sec. 207 ; Fox *v.* Clifton, 6 Bing. 792 ; City Bank *v.* Phillips, 22 Mo. 88 ; McComas *v.* Covenant Mutual Life Ins. Co., 56 Mo. 573 ; Transportation Co. *v.* Insurance Co., 6 Blatchf. 250 ; Lester *v.* The State, 9 Mo. 658 ; Lemons *v.* The State, 4 W. Va. 755 ; 2 Wag. Stat. 1067, sec. 33 ; Atwood *v.* Gillespie, 4 Mo. 423 ; Armentrout *v.* Railroad Co., 3 C. L. J. 236 ; Johnston *v.* Morrow, 60 Mo. 339 ; Bauer *v.* Franklin, 51 Mo. 205 ; Margrave *v.* Ausmuss, 51 Mo. 561 ; Clark *v.* Conway, 23 Mo. 438 ; Estel *v.* Railroad Co., 56 Mo. 282 ; Viele *v.* Insurance Co., 26 Iowa, 57, 71, 72 ; Bevin *v.* Insurance Co., 23 Conn. 254 ; Horwitz *v.* Insurance Co., 40 Mo. 557 ; Hayward *v.* Insurance Co., 52 Mo. 195 ; Thompson *v.* Insurance Co., 52 Mo. 470 ; Pelkington *v.* Insurance Co., 55 Mo. 172 ; Pratt *v.* Morrow, 45 Mo. 407 ; Fleming *v.* Gilbert, 3 Johns. 528 ; Geib *v.* Insurance Co., 1 Dill. 448, 451.

BAKEWELL, J., delivered the opinion of the court.

This is an action upon a policy of insurance, dated February 8, 1861, whereby, in consideration of $56.71 paid by plaintiff to defendant, and of an annual premium of the same amount, to be paid on February 8th of every year, defendant assured the life of Stewart Steele, Jr., plaintiff's husband, for the sole use of plaintiff, for the term of his

natural life, in the. sum of $3,000. The policy provides that, in case of failure to pay the annual premium on the days mentioned, defendant shall not be liable for the sum insured, and the policy shall cease and determine. The policy remained in force up to February 8, 1873. During a period of years prior to that time defendant printed and distributed a number of circulars, of which a copy, marked "Exhibit B," is attached to the petition, containing the following advertisement:

"This company, having no desire to reap an advantage from the misfortunes of such of its members as may, through adverse circumstances, be unable to meet promptly their annual premiums, has made its annual life policies, now in force and hereafter to be issued, non-forfeiting, by extending the full amount. of the insurance over such period of time as the premium reserve or value of the policy will pay for, applied as a single. premium for temporary insurance."

This statement was followed by a table illustrating the plan. It also provided that the indebtedness, if any; either for notes or premiums, standing against the policy was to be deducted from the reserve, and the balance only applied as aforesaid. Stewart Steele, Jr., was the agent of plaintiff for the payment of premiums, and was so recognized by defendant, and paid all the premiums duly for twelve years, and up to February 8, 1873. The premium of that year was not paid. Stewart Steele, Jr., died, in St. Louis, on September 18, 1873.

It is alleged by plaintiff, in her petition, that defendant distributed thousands of copies of this circular, and especially amongst the holders of its annual life policies; and that in this way, and in other ways, notice was given to Stewart Steele, Jr., agent of plaintiff, by defendant, of the assurances contained in said prospectus; and that Stewart Steele, Jr., acting for plaintiff while said policy was still in force, having notice of said assurances and stipulations of defendant, relied upon them, and, therefore, did not pay the

premium due February 8, 1873. It was further alleged, and was admitted on the trial, that the balance of reserve on the policy sued was sufficient, if applied according to said notice, to carry the insurance for the amount named in the policy beyond the day of the death of Stewart Steele. The petition also alleges that, by reason of the premises, defendant waived the condition of the policy as to forfeiture, and that the policy was in force at the date of Steele's death.

The answer sets up as a defense the condition as to forfeiture by non-payment of premiums, and alleges as a breach the non-payment of the premium due February 8, 1873. The reply sets up again the allegations of the petition as to the notice to Steele, and pleads them by way of estoppel.

Another distinct matter of defense is pleaded, but, as it was traversed by the reply and was not insisted upon at the trial, it is not necessary to set it out.

On the trial, plaintiff introduced as witnesses the secretary, receiving teller, and stationery clerk of defendant, by whom he proves that the circular containing the notice before referred to was issued in January, 1869; that about 50,000 copies of it were distributed about St. Louis by the soliciting agents of defendant, and sent out to agents abroad; that it lay on the counters and desks in the office of defendant, for distribution, in piles which were renewed every day. Over 100,000 copies thus passed through the hands of the stationery clerk, whose duty it was to keep the office and the agents supplied with them, during the eighteen months following January, 1869. These circulars were also placed on the desk where premiums were received, that they might be taken by the customers of defendant. The premiums on the policy sued on were in every case paid at the office; and though the witnesses cannot recollect whether or not these premiums were on any occasion paid at the office of appellant by Stewart Steele in person, there is evidence that he did, on two occasions after the

issuing of this circular — in February, 1870, and February, 1871 — pay the premium himself over the counter on which a pile of these circulars was lying, to be taken by those doing business at that counter. Extraordinary efforts were used to bring actual notice of the contents of this circular to every person having dealings with defendant. There is, however, no witness who states that Stewart Steele, to his knowledge, ever actually had in his possession, or read, the circular, or the notice which was a part of its contents. There was no attempt to show, and it does not seem to be pretended, that the proposition set forth in this circular was ever withdrawn or modified.

At the close of plaintiff's case, defendant asked an instruction in the nature of a demurrer to the evidence, which was refused.

Defendant then read in evidence the premium note of Stewart Steele, dated February 8, 1872, at twelve months, for $154.30, to the order of defendant, for part premiums then due on the policy in suit; the execution of which was admitted by the pleadings.

The following instructions were given at the instance of plaintiff:

" 1. If from the evidence the jury believe that the policy sued on was taken out in plaintiff's name and for her benefit by Stewart Steele, and that he was her representative for the purpose of providing for the payment of the premiums thereon; and if the jury are further satisfied from the evidence, or the circumstances given in evidence, that, before any failure to pay the premium due February 8, 1873, defendant distributed to and among the holders of its annual life policies thousands of copies of the prospectus, or, circulars, given in evidence in this case, and that said Stewart Steele knew of such circulars and relied thereon and upon the announcement and assurances therein contained, and that, so relying thereon and being influenced thereby, and being plaintiff's representative in that behalf, the said

Stewart Steele did not pay said premium due February 8, 1873; then, it being admitted that said policy is an annual life policy, this action will not be defeated by reason of the non-payment of said premium, provided the jury are further satisfied from the evidence that the premium reserve, or value of said policy after deducting therefrom any indebtedness standing against the policy, was sufficient, on February 8, 1873, if applied as a single premium for temporary insurance, to extend said insurance beyond the day of the death of said Steele.

" 2. If the jury find for plaintiff, they will assess her damages at the amount of the policy, less the premium due February 8, 1873, and the amount of the premium note unpaid, with interest on said note from its date to February 8, 1873, at the rate of six per cent. per annum, with interest on the remainder at the rate of six per cent. per annum from February 18, 1874.

" 3. The jury are instructed that it is admitted by the pleadings that all things relating to the payment of premiums on the policy in suit, except the premium due 8th February, 1873, were done by Stewart Steele for and on behalf of plaintiff; that plaintiff was the lawful wife of said Steele at all times named in said policy up to the time of his death; that said Stewart Steele died on the 18th November, 1873, and that due and satisfactory notice and proof of said death of said Stewart Steele was given defendant; and that more than ninety days elapsed before the commencement of this suit."

To the giving of these instructions defendant excepted.

The following instructions were given at defendant's instance:

" 1. The jury is instructed that the circulars introduced by plaintiff can have no legal effect to in any way affect the terms or conditions of the policy sued on, unless it is proven to the satisfaction of the jury that such circular was actually received by the plaintiff, or her deceased husband,

either directly or by her agent, and that she or her agent relied upon the same, and was induced thereby to omit payment of the premium on the policy sued on, payable February 8, 1873.

"2. The court instructs the jury in this cause that, to entitle the plaintiff to recover in this action, the jury must be satisfied from the evidence that deceased received the circulars introduced in evidence by plaintiff, but that he also relied on the terms and conditions of said circulars, and so relying thereon, and not for any other reason, neglected and failed to pay the premium on the policy due and payable February 8, 1873.

"3. It is admitted by the pleadings that no part of the premium due February 8, 1873, was ever paid by plaintiff, or Stewart Steele, her husband."

Defendant asked the court further to instruct that the circulars introduced by plaintiff had no legal effect; that, if the premium due February 8, 1873, was not paid, then plaintiff could not recover; and that the circulars could have no legal effect unless plaintiff or her agent assented to them, and gave notice to defendant of such assent before February 8, 1873.

These last instructions were all refused, and defendant excepted.

There was a verdict and judgment for $3,116.68, and, a motion for a new trial having been filed and overruled, and all exceptions saved, the cause is brought here by appeal.

1. It seems to have been urged below that the damages were excessive, but that point is not made in argument here; and it would seem that, if plaintiff is entitled to recover at all, the verdict is not too large.

2. Witnesses, against the objection of defendant, were permitted to refer to the circulars issued in 1870, whereas the petition speaks only of the circular of 1869. But, independently of the fact that the objection to this evidence was not made in a manner sufficiently specific to save the point,

the evidence as to either circular stood on the same footing; and if the testimony as to the circular of 1869 was competent, then that as to the circulars of January and July, 1870, was equally so; for the latter circulars were shown to be mere reissues of the first, and all were published whilst this policy was in force, and before February 8, 1872. It will appear from what we shall proceed to say that we regard the testimony as to these circulars as competent and material.

3. We see nothing in the giving or refusing of instructions of which defendant can complain.

The court put it to the jury to determine from the evidence whether Stewart Steele knew of, relied on, and acted upon the assurances made in the notice contained in these circulars. The jury found that plaintiff, or her agent, did receive the circular of defendant, and relied upon the same, and was thereby induced to omit the payment of the premium due February 8, 1873; and we think there was evidence from which the jury might so find.

In *Wheelton* et al. v. *Hardisty* et al., 8 El. & Bl. 232 (1857), the replication was on the equitable ground that, before the policy was entered into, defendants circulated a prospectus whereby they undertook that their policies should be unquestionable except on the ground of fraud, and that plaintiffs were induced to enter into the policy on the faith thereof. Issue was taken thereon. On the trial it appeared that such a prospectus was issued, but no express proof was given that plaintiffs saw it, or were induced by it to take the policy. The jury found for the plaintiffs, and it was held that there was no sufficient evidence to warrant this finding. Lord Campbell dissented, and, on this part of the judgment below, the Exchequer Chamber pronounced no opinion. The judgment of the Queen's Bench was announced in the following language:

"The verdict was for plaintiffs, subject to the questions whether there was any evidence of plaintiffs knowing of, or having been induced to enter into the policy by, the pro-

spectus.   On the first point, the question is whether the proof was such as that a jury could reasonably come to the conclusion that the plaintiffs knew of, and acted on, the prospectus.   The Exchequer Chamber has now put an end to what had been treated as the rule, that a case must go to the jury if there was what had been termed a scintilla of evidence.   No such proof, it seems to us, could justify a jury in finding the issue for plaintiffs.   Plaintiffs may very well have effected the contract without any reference to the prospectus.   Evidence of the existence of the prospectus was quite as consistent with the plaintiffs not knowing or not being induced to act upon it, as of their knowing or acting upon it.''

Now, independently of the dissent of Lord Campbell and the silence of the Exchequer Chamber, the case at bar differs from the case just cited, in these circumstances : First, that the old English rule seems still to obtain in this State, and if there be any evidence the jury is to pass upon it, however weak it may be ; and, second, inasmuch as plaintiff's agent had paid the premiums, in the policy sued on in the case at bar, punctually for twelve consecutive years, and, in the event of his ceasing to pay, would, in the absence of knowledge of this prospectus, lose all benefit of the money he had already advanced for his wife, the evidence in the case at bar was by no means as consistent with his not knowing of the prospectus as it is with his knowing and acting upon it.   In this case the prospectus was issued and so circulated and thrust under the nose of every one having dealings with defendant that it seems difficult to believe that plaintiff's agent did not see it and read the notice it contained.   In the case of *Wheelton* v. *Hardisty* the officers of plaintiffs were on the witness-stand, yet they were never asked whether they had seen the prospectus, or been induced by it to insure with defendants.   In the case at bar, Steele, who paid these premiums, was dead, and we can never learn from his mouth whether he read this prospectus,

or was influenced by it to cease paying his premiums. In *Wheelton* v. *Hardisty* it does not seem to have been proved, except by inference, that the prospectus in question was given to the customers of defendants, or posted up in defendants' place of business; but in the case before us there was direct proof of both these facts.

We quote from the dissenting opinion of Lord Campbell:

" Was the judge, at the trial, wrong in leaving the issue of the equitable replication to the jury, and telling them that, from the circulation of the prospectus in the manner admitted, and the execution of the policy, they might, if they were so convinced, without express evidence to that effect, find that plaintiffs had seen the prospectus and were induced by it to effect the policy with defendants? From two facts being established by express evidence an intervening fact may be presumed. If a strong probability is raised by express evidence, unless the probable consequence may be inferred, the business of life could not be conducted, and justice could not be administered. In the present case, the jury were by no means bound to infer that the plaintiffs saw the prospectus and were influenced by it. But I think that the jury might not unreasonably infer that, according to the course of business, copies of the prospectus were given to customers coming to defendants' place of business, and were posted up in their office so as to be seen by all who dealt with them; the object of the defendants evidently being that the prospectus should be known as generally as possible. Suppose that it had been proved that over the entrance door of the house in which the business of defendants is conducted there had been the words, in large letters, *All policies effected with this association shall be unquestionable unless obtained by fraud,* and that there was a similar notice on the walls of the room in which the policy in question was executed and delivered to plaintiffs, would it have been necessary for plaintiffs to give evidence that they had actually seen and read the notice? Might not the jury equally infer

that the prospectus generally circulated, according to the admission, was seen and read by the plaintiffs?"

And Coleridge, J., says, in *Watson* v. *Earl Charlemont*, 2 Ad. & E. (N. S.) 863: "I am of opinion that, if an advertisement is put out to induce parties to enter into a certain contract, and an individual does afterwards enter into such contract, and then comes into court to complain of misrepresentation, it is no part of his case to show that he was cognizant of the advertisement. *Prima facie*, it will be taken that he was influenced by it." In this opinion Wightman, J., concurred.

In *Wontner* v. *Shairp*, 4 Man. G. & S. (56 C. B.) 408, some evidence was given from which it might be inferred that the plaintiff saw the advertisement, and it was held that the jury might well find that it was a material inducement for him to pay his money. There was no direct evidence that plaintiff saw the advertisement; but it was published in *The Times*, and plaintiff took *The Times*.

There was, then, we think, evidence from which the jury might find that Steele saw the notice of defendant and acted upon it.

4. It remains to consider the legal effect of this evidence. It is held by appellant that the evidence, as tending to vary a written contract, is incompetent.

It is said by Chief Justice Parker that policies of insurance, though not under seal, have, nevertheless, ever been deemed instruments of a solemn nature, and subject to most of the rules of evidence which govern in case of specialties. *Higginson* v. *Dall*, 13 Mass. 96. "If this circular is admitted," it is urged by appellants, "it is by the invocation of oral testimony. Of itself it proves nothing, as it bears no evidence of being the act of the parties. It is produced as containing the usage by which it is alleged the company is bound. It is set up by parol. Its promulgation is proved by parol; and, if admitted, it is brought to bear upon the policy by the aid of parol evidence. If admitted, it con-

tradicts the express stipulations of the policy.'' This is the language of Nisbet, J., delivering the opinion of the court in *Insurance Company* v. *Ruse*, 8 Ga. 534 (1850).

In that case printed proposals, purporting to be the terms and conditions of insurance, were put out by the company to persons dealing with them, one article of which was that a party neglecting to settle his annual premium, within thirty days after it is due, forfeits the interest he has in the policy. There was no reference to the printed proposals in the policy. The premium was due April 10, 1847, and the insured died four days after that date, leaving the premium unpaid. It was held that the article in relation to thirty days did not extend the contract of insurance beyond the time designated in the policy.

So, in England, it has been held that where an insurance company advertises that they do now and have always considered insurances in their office as continuing fifteen days after the time limited for payment in the policy, such an indulgence is merely to avoid the expense of new stamps and a new policy, and serves merely to keep the policy in suspense; but that, if the premium is not paid before loss, the defendant is not liable. *Tarleton* v. *Staniforth*, 5 T. R. 695; *Salvin* v. *James*, 6 East, 591.

In *Ruse* v. *Mutual Benefit Life Insurance Company*, 26 Barb. 556, the insured died three days after the premium was due, leaving it unpaid. A prospectus of the company, setting forth that a party neglecting to settle his premium within thirty days after it was due forfeits all interest in the policy, was introduced in evidence, and proved to have been shown to the insured when the policy was taken out. The Supreme Court held that the prospectus was a waiver of the forfeiture. On appeal, the Court of Appeals (23 N. Y. 376) reversed the cause, and held the prospectus inadmissible to vary or control the express provision of the policy; but, on motion for rehearing (2 N. Y. 653), the court says that the attention of the court was not called to

several decisions in England where a contrary rule had been adopted in reference to the prospectus controlling the terms of the policy ; that these cases certainly hold that the prospectus might equitably be regarded as controlling ; and that an examination of these cases would probably have led the court to different conclusions on this point. But, as the case turned on a different point in the Court of Appeals, the rehearing was denied. The English cases referred to are *Wood* v. *Dwarris*, 11 Exch. Rep. 493 ; *Collett* v. *Morrison*, 9 Hare, 173 ; and *Wheelton* v. *Hardisty*, referred to above.

In Massachusetts, where the general course of decision in policies of insurance is much stricter than in other States — certainly stricter than in New York and most of the Western States — matters preceding, or contemporary with, the issuing of the policy, and resting in parol, are not admitted to establish a waiver of its conditions ; but in New York, Michigan, Iowa, Wisconsin, and other States, parol evidence of conduct of the agents of the insurer, before or at the date of the policy, is held admissible to establish a waiver of its conditions. *Viele* v. *Germania Ins. Co.*, 26 Iowa, 1, and note.

It is well settled that parties may, by a subsequent parol agreement, on sufficient consideration, abrogate or vary a written contract. *Henning* v. *United States Ins. Co.*, 47 Mo. 430. But the decisions in our own State go further than this, and it is held that the waiver of a condition, or of a forfeiture of a policy of insurance, need not be founded on a new consideration ; and that the company may be estopped where, by a course of dealing, or its open actions, it has induced the insured to pursue a policy to his detriment. *Horwitz* v. *Equitable Ins. Co.*, 40 Mo. 360. In *Thompson* v. *St. Louis Life Insurance Company*, 52 Mo. 470, the policy sued on had a memorandum at its foot, that " agents are not authorized to waive forfeitures. If premium is received by the company after the day named, it is an act of courtesy and grace, and forms no precedent." It

was shown that the defendant had received premiums of the insured weeks after they were due ; the premium due on March 28, 1870, was not tendered until two days afterwards, when it was refused. The insured shortly after died. It was held that defendant was liable. So, where there was an express condition in a policy of life insurance that, if any other insurance was taken without written consent of the company indorsed on the policy, the policy should be void, other insurance was taken, and notice given to the agent of the company, who expressed no dissent, but no indorsement was made, the company was held to be estopped to set up this want of indorsement as a defense. *Pelkington* v. *National Ins. Co.*, 55 Mo. 172 ; *Geib* v. *Ins. Co.*, 1 Dill. 449.

5. The second instruction requires the jury to deduct from the amount of the policy the premium due February 8, 1873, and also the premium note maturing on that day. This instruction cannot be defended, but the error is not to the prejudice of appellant, nor has our attention been called to it in the argument. It is clear that the premium due on February 8th, and the premium note due on that day, were both paid by the premium reserve. Had this not been so, the policy would have been forfeited for non-payment of premium, for the premium was not otherwise paid. The petition alleges that the balance of reserve on February 8, 1873, was sufficient to keep up the insurance until October 17, 1877, for the full amount. It was admitted on the trial that this balance was sufficient to keep up the insurance for the amount named in the policy for a period beyond Steele's death ; and, before closing her case, plaintiff offered to show to what date the reserve would keep the policy alive, but on objection of defendant she was not permitted to do so. This testimony was objected to by defendant on the ground that it was wholly immaterial in view of the admission by defendant that the reserve was sufficient to keep up insurance for the full amount up to, and beyond,

the date of the death of the insured.    If it was material to prove that the reserve balance was in fact sufficient to keep up the insurance until October 17, 1877, the date alleged by plaintiff in her petition, in view of the exclusion of testimony to this effect at the instance of defendant, on the ground of its immateriality, this might be taken as admitted.    It is, however, sufficient that the reserve carried the insurance for the full amount of the policy up to the death of Mr. Steele.    It therefore paid the premium of February, 1873, and the premium note, and it is strange that plaintiff should have asked and obtained an instruction injurious to herself and at variance with her own theory of the case. The verdict should have been for $3,000, and interest from February 18, 1874 (three months after Steele's death), at 6 per cent.    It is for a sum considerably less than this amount; but this is not an error of which defendant can complain, though it is caused by the erroneous directions given to the jury at the instance of plaintiff.

We are of opinion that there was evidence to go to the jury upon the question whether Steele knew of and relied upon the assurances made in the prospectus, and this evidence was competent; and the jury having found that Steele did know of and rely upon the proposal of the company to extend the full amount of the insurance over such period of time as the premium reserve would pay for, the company is estopped by its acts and declarations from asserting, as a defense against this policy, that the premium of February 8, 1873, was not paid.

We see no error in the record to warrant a reversal of the judgment, and it is affirmed.    All the judges concur.