EDWARD RAGSDALE, RESPONDENT, v. BROTHERHOOD OF RAILROAD TRAINMEN, APPELLANT.—80 S. W. (2d) 272.

Kansas City Court of Appeals. December 3, 1934.

*Thos. J. Tydings* and *W. M. Stringer* for respondent.

*Hunter & Chamier* for appellant.

TRIMBLE, J.—The suit herein was instituted May 7, 1933, on a Benefit Certificate or policy of insurance dated April 1, 1900, issued to plaintiff, a Member of Magic City Lodge No. 57 of Moberly, Missouri, of which city and State he was, at all times, a resident and citizen. The second amended petition, on which the case was tried, charged that defendant is and was at all times "a voluntary unincorporated association" . . . "doing business as an insurance company in the State of Missouri," and issued the policy whereby it promised to pay plaintiff the sum of eighteen hundred seventy-five dollars, in the event of plaintiff becoming totally and permanently disabled;" that on or about July —, 1931, and while said policy was in full force, plaintiff became totally and permanently disabled, made proof thereof, and fully complied with all the terms and conditions of said policy, and on or about September 1, 1931, demanded said $1875, but defendant denied any and all liability and refused to pay anything.

The said second amended petition further alleged that at, prior to, and ever since the issuance of said policy to plaintiff, the defendant, through its Grand Secretary and Treasurer, "stated and represented that every member of defendant association was insured against total and permanent disability and death," that such statement and representation was circulated by defendant, and plaintiff accepted his policy, relying upon said statement and representation, and by reason thereof defendant is estopped from denying liability or "from claiming that plaintiff's total and permanent disability had to be occasioned by any certain cause, in order to render defendant liable upon said certificate or policy of insurance. (Defendant's contention was, and is, that under defendant's Constitution and By-laws the plaintiff's "total and permanent disability" had to be caused either by the loss of a hand or foot, or the loss of the sight of both eyes;

while plaintiff's claim is that the "total and permanent disability" is not to be so limited but is as broad as the words indicate.)

Other allegations were made setting up vexatious refusal to pay and asking for penalty and attorney fees; but as the court denied recovery upon these issues no attention need be given to them.

Defendant's answer, after a general denial, set up that it is, and was, at all times mentioned—

"A fraternal beneficiary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for pecuniary reward or profit, and that such is and was at said times its sole object and purpose; that it now has, and at said times always has had, a lodge system with ritualistic form of work and representative form of government, and is and was at said times engaged in the business of insuring its members, making provisions for the payment of death benefits, and benefits in certain cases of temporary and permanent physical disability, as the result of accident and old age; that as an incident to membership in said association, it issues and has issued to its members a benefit certificate, payable from the proceeds of its regular dues and special assessments of all members of the association; that it is and was at said times a labor organization, consisting of one Grand Lodge and a large number of subordinate lodges, and that membership in said lodges is and was confined to persons of one hazardous occupation, to-wit railroad trainmen engaged in the hazardous occupation of managing and operating railroad trains; that neither said Grand Lodge nor said subordinate lodge is, or ever was incorporated, and defendant is a voluntary unincorporated association; that said Grand Lodge is and was the supreme legislative and governing body; that said brotherhood has adopted a constitution, by-laws, rules and regulations for governing said Grand Lodge and such subordinate lodges, and all the members of the organization, and which have to do with the relationship between its members, between themselves, and their employers; and which obligate and bind each member to pay his dues and assessments promptly, and to yield cheerful compliance to such constitution, by-laws, rules and regulations, which reserve such Grand Lodge full power and authority to alter, amend and repeal such constitution, by-laws, rules and regulations; and which make each beneficiary certificate issued, subject to, governed and controlled by, such constitution, by-laws, rules and regulations, as may be in force at the time such certificate is issued, and such as may be thereafter adopted; and that defendant makes provision for contracts of insurance and that each contract, according to its scheme of organization and rules governing it, consists of the application, the certificate, and such existing and after enacted constitution, by-

laws, rules and regulations. That defendant makes provisions for total and permanent disability claims, and benevolent claims, subject to the exceptions, limitations and conditions set out in the contract, and subject to compliance therewith by the members; that the funds from which the expenses of said association are defrayed and payment of benefits made, are derived from dues and assessments collected from the members; that the main aims, purposes and objects of said association and reason for its organization are the following: To unite the Railroad Trainmen; to promote their general welfare and advance their interests, social, moral and intellectual; to protect their families by the exercise of benevolence, very needful in a calling so hazardous as that of railroad trainmen;''

That plaintiff made application to become a member of defendant and was accepted as such, and thereafter on April 1, 1900, was issued a beneficiary certificate Class C by the Grand Lodge, by which he became entitled to all the rights and benefits of membership, ''and to participate in the beneficiary department Class C, of said brotherhood.''

That in the certificate it was provided that—

■ ''Application, said certificate, the constitution, by-laws, rules and regulations of the association, and all amendments made to said constitution, by-laws, rules and regulations, should constitute the contract between plaintiff and defendant, and should govern the payment of benefits thereunder; that plaintiff by said contract did covenant and agree with defendant that said instruments should constitute the contract between him and the defendant and should determine and control the payment of any benefit; that said contract made up as aforesaid is the only contract ever entered into between plaintiff and defendant; that said instruments expressly provided and provide that under no circumstances should plaintiff be entitled to any benefits, except such, and only such, as might be provided for a Class C member in and by the said contract so made up, subject to the conditions, limitations and provisions set out in said instruments, and subject to compliance therewith by plaintiff;''

That said certificate and said constitution and by-laws, rules and regulations provided that—

■ ''No member should be considered totally and permanently disabled unless he should suffer the amputation or severance of an entire hand at or above the wrist joint, or should suffer the amputation or severance of an entire foot at or above the ankle joint, or should suffer the complete and permanent loss of sight of both eyes, or should become 70 years of age; that said instruments and contract provided and provide that plaintiff should be a Class C member and should receive the full amount of such class upon his becoming totally

and permanently disabled, but that he should not be considered totally and permanently disabled, unless disabled as in this paragraph hereinbefore set out, and that if he sustains such disability he should make and present to defendant proofs of such disability. Defendant says that plaintiff never did present to defendant any proofs of such disability, as provided by said contract, and that he has never suffered the amputation or severance of any part of either hand or either foot and has not suffered loss of sight of either eye and has not reached the age of 70 years, and therefore is not entitled to recover for a total and permanent disability claim;"

That the certificate, constitution, by-laws, rules and regulations required certain proofs to be made, which plaintiff strictly followed, and they were properly executed and forwarded to the general secretary and treasurer and considered by the beneficiary board, which refused said claim and gave due notice of such refusal to plaintiff, and that the action of the beneficiary board would be reported to the Insurance Board and this last named Board would meet on the second Monday in January thereafter for the purpose of considering such disapproved claim; that thereafter said board of insurance at its next meeting considered said claim and refused and disapproved the same, of which due notice was given plaintiff and said local lodge;

That Sections 70 and 71 of the Constitution, the sections under which plaintiff made his claim, provide that all claims for disability, not considered total and permanent disability claims, should be—

"Held to be addressed to the benevolence of the brotherhood, and should in no case be made the basis of any legal liability on the part of the brotherhood; that such claim should be referred to the beneficiary board that the approval of such board should be required as a condition precedent to the right of any such claimant to benefits under said section; and it was further provided by said section 70, that said section might be pleaded in bar of any suit or action at law or in equity, which might be commenced in any court to enforce the payment of any such claim, and that no appeal should be allowed from the action of said board, but that the general secretary and treasurer should report such disapproved claims to the board of insurance for such disposition as it might deem just and proper, and defendant says that the claim of plaintiff herein was referred to said beneficiary board as provided by said constitution and that said board disapproved said claim, and the same was referred to the board of insurance which also disapproved the same, and therefore he is not entitled to any benefits under said section, and said section 70 is hereby pleaded as a bar to this action. Defendant says that said claim is the only claim ever made by plaintiff, and that since his claim was made under said section 70, and he petitioned for a claim

thereunder, and presented his proofs as required by said section 71, for a benevolent claim under said section 70, and said claim was refused and disapproved by the beneficiary board and the board of insurance, he is not entitled to recover, because such claim by him was addressed to the systematic benevolence of the brotherhood, and said boards have refused said claim, and because said section 70 contains no promise to pay, but rests entirely upon a basis of benevolence, and does not involve a determination of legal rights, but is purely a question of benevolence which said boards have duly considered and refused, and the findings made by them are conclusive on plaintiff, and he cannot maintain this action;''

That the constitution, by-laws, rules and regulations in effect at all times provided and provide that plaintiff should not be entitled to any right or interest in the beneficiary funds, unless his grand and subordinate dues and all assessments are paid within the time specified in the constitution, otherwise his beneficiary certificate would become null and void and any failure to make such payment would cause the forfeiture of all rights under the said certificate and any member failing to pay as required become expelled without notice and all rights of beneficiary memberships should instantly cease; that plaintiff failed to pay those payable before the 1st day of May, 1933, and his certificate thereby became void and his rights thereunder ceased, and he cannot maintain this action for this reason:

That in plaintiff's application it was provided that—

''Any beneficiary certificate based upon such application, should be held to a contract made in the State of Illinois and subject to its laws; that at the time said certificate was issued, section 39 of the constitution of the Grand Lodge then in force, provided that a beneficiary certificate, such as issued to plaintiff, should be in all respects deemed to be made under and to be interpreted and construed in accordance with the laws of the State of Illinois;''

In this connection defendant's answer set up that the Supreme Court of Illinois interpreted and construed such a certificate and contract as sued on herein in Kelly v. Brotherhood of Railway Trainmen, 308 Ill. 508, which held that the association is liable—

''For total and permanent disability only in case such disability is of the character mentioned in paragraph 5 (third quotation hereinabove) of this answer; that such a provision as section 70 mentioned in paragraph 6 (4th quotation above) of this answer cannot be made the basis of any legal liability, is valid, and not against public policy, and that a member cannot enforce a claim for total disability which under the terms of the contract is addressed to the benevolence of the order if the beneficiary board has refused to allow it; that total and

permanent disability such as plaintiff claims herein is not covered by the contract and certificate.''

And that said Supreme Court in said case further held that the definition of ''total and permanent disability'' as hereinbefore set out is valid, and that the contract of insurance herein must be construed and interpreted according to the law announced in the Kelly case.

The answer also set up that section 39 of the constitution and by-laws was repealed in the year 1901, and in lieu thereof two new sections were adopted, being sections 3 and 65 of the *present* constitution, the first of which sections provides that the headquarters of said Grand Lodge shall be located in Cleveland, Ohio, and that section 65 provides that all beneficiary certificates shall in all respects be deemed to be under, and construed in accordance with, the law of the State in which the Grand Lodge has its headquarters; that the Supreme Court of Illinois, in the case of Fullenwider v. Supreme Council, 180 Ill. 621; Alexander v. Parker, 144 Ill. 345; Covenant Mut. Life Assn. v. Kentner, 188 Ill. 431; Lehman v. Clark, 174 Ill. 287; Steen v. Modern Woodmen of America, 296 Ill. 104, has held—

''That the contract of a member of a fraternal beneficiary society, such as entered into between the parties herein, consists of the application for membership, the constitution, by-laws, rules and regulations of the society and the benefit certificate issued, and that all are to be construed together as one harmonious whole.''

That such is in accord with the law of Ohio as announced in Order of Railway Conductors v. Carpenter, 114 Ohio St. 255.

Defendant further pleaded that the Supreme Court of Illinois in the cases of Apitz v. Supreme Lodge K. and L. of Honor, 274 Ill. 196; Steen v. Modern Woodmen of A., 296 Ill. 104; Murphy v. Nowalk, 223 Ill. 301; Fullenwider v. Supreme Council of R. L., 180 Ill. 621, and a number of other Illinois cases mentioned have held that—

''Where the contract contains an express provision reserving the right to amend, or when a member of a fraternal beneficiary society accepts a benefit certificate which provides that it is issued upon condition that he shall comply with the constitution, by-laws, rules and regulations then in force or thereafter enacted, and which are expressly made a part of such certificate they become a part of his certificate and contract as they are adopted from time to time and he is bound thereby.''

That the courts of Ohio have construed a contract such as sued on in the case at bar, in certain cases named in the defendant's answer, have held and decided that—''a member such as plaintiff, holding a certificate and contract such as plaintiff holds cannot recover for disability unless he is disabled in the manner mentioned in paragraph 5 (3rd quotation hereinabove) of this answer, and is not entitled to

recover under said section 70 referred to in paragraph 6 (our fourth quotation) of this answer, because it makes no promise to pay, and is addressed to the systematic benevolence of the order and cannot be made the basis of any legal liability; that said section 70 is not against public policy, and under it plaintiff is conclusively bound by the action of the beneficiary board;'' and hence plaintiff cannot recover herein for the reason that the contract and certificate sued on herein must be construed in accordance with the laws of Illinois and Ohio which are in harmony.

The plaintiff signed and accepted the certificate sued on herein— ''upon the conditions mentioned therein and that he signed said constitution, by-laws, rules and regulations and agreed to comply therewith and support the same; that at all times mentioned in the petition plaintiff recognized and considered said constitution, by-laws, rules and regulations as a part of said contract and made his claim under sections 70 and 71 thereof;'' and proceeded thereunder and induced defendant to receive such claim and pass thereon in accordance with said constitution, by-laws, rules and regulations; and defendant relied on the fact that plaintiff considered said constitution, by-laws, etc., as a part of the contract and agreed that he would comply therewith; and defendant received plaintiff's claims and had the beneficiary board and board of insurance to consider and pass thereon, and defendant relied on the fact that plaintiff would abide by the decisions of said boards, and not do anything in violation of such instruments; and that by reason of plaintiff's conduct ''he himself recognized and construed said instruments as a part of said contract,'' and is now estopped to *deny* that they are a part of said certificate and contract, or that the *after-enacted constitution, by-laws, rules, etc., are binding on him* or that the action of said boards on his claim are *conclusive* on him.

That the domicile of the defendant and its headquarters' main and principal place of business was and now is in Cleveland, Ohio, and defendant was at all of said times duly licensed to transact business in Ohio as a fraternal beneficiary association;

That the rights of plaintiff under said contract are governed by the law of the parent and home state of defendant, and the law of the domicile, Ohio, as announced in the decisions hereinabove cited, hold—

''That a member under such a certificate and contract as sued on herein, could not recover for total and permanent disability unless he was disabled in the manner mentioned in section 68 of the *present* constitution of defendant and that such member was not entitled to recover under section 70 of the present constitution because it made no promise to pay and such claims were addressed to the benevolence of the order and could not be made the basis of any legal liability and

that said sections were not against public policy and that the member is conclusively bound by the action of the beneficiary board; that such decisions constitute said law of Ohio, and that full faith and credit is due from the courts of Missouri under the United States constitution, article 4, section 1, to said Ohio decisions and the laws there announced which is the law of Ohio, and that not to give said laws of Ohio as to said interpretation and construction of said certificate and contract, full faith and credit, would be a violation of said full faith and credit clause of the United States constitution, and a violation of said clause would result from the refusal of the courts of Missouri to hold that the rights of the parties hereto were to 'be determined by said Ohio laws, and from a refusal to construe and 'interpret said certificate and contract according to said Ohio laws and from a refusal to hold that plaintiff is not entitled to recover herein.'' (Italics mine.)

The reply was first a general denial of all new matters set up in defendant's answer.

And then it set up that at the time plaintiff's certificate was issued, the constitution and general rules of defendant required that it be sent to plaintiff's local lodge, Magic Lodge No. 57, for delivery to and acceptance by him; and that said certificate was signed by plaintiff and attested by the secretary of said local lodge, all in Moberly, Missouri, of which plaintiff is a citizen and resident; and at the time the policy was delivered and accepted, said defendant had no license nor does it now have, any license to do business in Missouri.

That at the times above mentioned, and at this time, defendant's constitution and general rules contain the following rules;

''The sufficiency of all applications and their accompanying certificates shall be determined by the general secretary and treasurer.''

The reply further set up that defendant maintains an insurance fund of six million dollars at all times and that payments on its beneficiary certificates, including plaintiff's, are payable from said insurance fund and are not payable from assessments; that defendant issues 20-year payment life policies, endowment policies, and policies having nonforfeiture options providing for cash insurance and loan values and extended insurance on its members.

That since plaintiff's policy was issued defendant has—''issued and now issues a certificate limiting its liability for total and permanent disability in the following words: 'As defined in section 68 of the Constitution' and by such change in the form of its said certificates, defendant construed the certificate of plaintiff and all other similar certificates issued by defendant as not having limited the cause of total and permanent disability mentioned therein to the causes mentioned in the constitution and general rules now attempted

to be set up against plaintiff, and by such acts and conduct, defendant is now estopped from claiming that plaintiff's total and permanent disability had to be caused by any certain cause or causes; that in making proof of his total and permanent disability to defendant, plaintiff was furnished blank forms therefor by defendant, and that defendant should now be estopped from claiming that such proofs of disability were insufficient or not in accordance with defendant's constitution and general rules."

That—"in the case of Laib v. Fraternal Reserve Life Association, 177 Ill. App. 72, the Appellate Court of the State of Illinois held and such is the law in said State of Illinois; that a pamphlet sent out by agents of an insurance company, making representations as to the plans upon which it insures, is to be regarded as part of the contract of insurance entered into upon the faith of the representations, and is to be considered in connection with the policy in determining what the contract was."

A jury was waived and the case was tried before the court and after being taken under advisement, it rendered judgment on the 6th day of November, 1932, on which the court found that the policy sued on was issued to plaintiff, in which it insured plaintiff "against permanent and total disability; that—

"Defendant company is a nonresident of the State of Missouri and has never been licensed to do business in this State; that the certificate was signed and attested by a local officer and delivered to plaintiff in this State and is to be construed as a Missouri contract; that the plaintiff paid the premiums due upon said certificate to the first day of May, 1933; that plaintiff, prior to May 1, 1933, became totally and permanently disabled and made application to the defendant for the benefits due under said certificate, and that the defendant denied total liability."

The court further found that plaintiff is entitled to recover $1200 with six per cent interest thereon from the filing of the petition, and found for the defendant on the issue of vexatious delay. Wherefore judgment was rendered for $1235.60 and awarded execution therefor. The defendant appealed.

During, or immediately after, the argument of the appeal, defendant filed with the clerk a motion to transfer the appeal to the Supreme Court of Missouri, on the ground that the case involves the construction of the "full faith and credit clause" of the U. S. Constitution. [Art. 4, sec. 1.] Whether notice of the filing of this motion was given to plaintiff does not appear from anything in the record, at least no brief has been filed on said motion on behalf of plaintiff. However, we do not understand that the *construction* of this section of the U. S. Constitution is involved, but, possibly, only its

*application;* and of this matter, we have jurisdiction, and are not required to transfer the case to the Supreme Court of this State, as in a case where the *construction* of a section of the U. S. Constitution is involved. [Art. 6, sec. 12 of Mo. Constitution.] (See now sec. 5 of the amendment of 1884 of said State Constitution.) Passing the question of whether said motion is required to be passed upon by us, owing to lack of notice by the other side and the failure to give the precise section alleged to be violated, we are of the opinion that the case is not one which we are required to transfer, and hence the said motion is overruled. (The reason for this ruling may more fully appear hereafter in this opinion.)

It is undisputed that, while the policy was issued at defendant's home office in Peoria, Illinois, and the domicile of defendant was, some time later (long after the insurance contract had become fully executed) changed to Ohio, yet its delivery to and acceptance by plaintiff was done in Missouri, and the premiums paid in said last-named State. This makes it a Missouri contract; and its laws and decisions apply to and govern it. [Hoffman v. North American Union, 56 S. W. (2d) 599; Weed v. Bank Savings Life Ins. Co., 24 S. W. (2d) 653; Lukens v. International Life Ins. Co., 269 Mo. 574; Head v. New York Life Ins. Co., 241 Mo. 403, 414; Mayhew, Admr., v. Mutual Life of Illinois, 217 Mo. App. 429.] And this is true even though the contract of insurance contains provisions to the contrary. [Price, Admr., v. Conn. Mut. Life Ins. Co., 48 Mo. App. 280.] In this last cited case at page 294, the court, citing Equitable Life Ins. Co. v. Clements, 140 U. S. 266, say:

"We adopt the views of the Supreme Court therein expressed, which are to the effect that, where an insurance company does business in this State, and issues its policies to residents of this State, the validity of clauses in its policies must be determined by the laws of this State. The laws of this State establish a rule of public policy, which over-rides the freedom of contract of the parties, and makes waivers of statutory provisions ineffectual, although such waivers are contained in the strongest terms in the policies." [See, also, Crane v. New York Life Ins. Co., 148 Mo. 583; Crohn v. Order of Commercial Travelers, 170 Mo. App. 273; Horton v. New York Life Ins. Co., 151 Mo. 604; Orthwein v. Germania Life Ins. Co., 261 Mo. 650; Saunders v. Union Central Life Ins. Co., 212 Mo. App. 186; Johnson v. American Central Life Ins. Co., 212 Mo. App. 290 (in which the Supreme Court denied *certiorari*) ; 32 C. J., sec. 10, pp. 980, 981.]

The foregoing reveals at least one sufficient reason why the motion to transfer, because of the alleged involvement of a constitutional question, was overruled. It may also serve to answer certain other

claims raised by appellant as to the effect of certain provisions in the insurance contract as construed by the courts of Illinois and Ohio.

It is true, a reference in the policy of the constitution, rules and regulations of the insurer, makes them "a part of the contract" but the latter nevertheless remains a Missouri contract, under the circumstances of this case, and it remains governed by Missouri law as hereinbefore stated.

Again, it seems to be conceded that the defendant had no license to transact business in Missouri and hence the general insurance laws of this State apply to it and its contracts. In other words, it did not comply with the provisions of section 6005, R. S. Mo. 1929 (6 Mo. St. Ann., p. 4577), and, therefore, it cannot claim exemption from, but is under, the *general* insurance laws. [Harris v. Switch-men's Union, 237 S. W. 155; Reid v. Brotherhood of R. T., 232 S. W. 185; Schmidt v. United Order of Foresters, 228 Mo. 675; O'Neal v. Grand Lodge, B. R. T., 216 Mo. App. 212, 221; Saunders v. Union Central Life Ins. Co., 212 Mo. App. 186.]

In the case of Ordelheide, Adm'r, v. Modern Brotherhood of America, 268 Mo. 339, l. c. 344, it is said, citing Knights Templars, etc., Indemnity Co. v. Jarman, 107 U. S. 197, that a foreign insurance company (even a fraternal one) "cannot claim the benefits of the law merely because its contracts are the character mentioned in the law, but to claim the exemption given, it must come under the law, and make its contract under the law."

Moreover, for defendant to have the contract of insurance herein construed as one of a fraternal beneficiary association, it (the policy) must be one of the kind authorized by our statute (Sec. 5995, R. S. Mo. 1929, 6 Mo. St. Ann., p. 4567) to be issued. [Umberger v. Modern Brotherhood of America, 162 Mo. App. 141, 144; Herzberg v. Modern Brotherhood of America, 110 Mo. App. 328; Kroge v. Modern Brotherhood of America, 126 Mo. App. 693.] The policy does not state or show that the amount to pay the insurance promised is to be gathered, in whole or in part, from assessments on the policy holders (nor is it so gathered) and, therefore, it cannot be held otherwise than old line insurance. [O'Neal v. Brotherhood of Railroad Trainmen, 216 Mo. App. 212, 220.]

The insurance policy in the case at bar was issued in 1900 long before the enactment of section 6021, Revised Statutes 1929, 6 Mo. St. Ann., p. 4588 (which was done in March, 1911), and hence said section 6021, exempting "societies which limit their memberships to any one hazardous occupation" does not apply to nor exempt the defendant in this case from the operation of the general insurance laws. [O'Neal v. Grand Lodge, B. R. T., 216 Mo. 212, 221, 222;

Schmidt v. Supreme Court United Order of Foresters, 228 Mo. 675.]
A life insurance policy is governed by the law in force at the time it
was issued. [Liebing v. Mutual Life Ins. Co., 280 Mo. 11.]

In view of the foregoing we think the policy, in the case at bar,
should be regarded and treated as an old line policy. [Murphy v.
Brotherhood of Railroad Trainmen, 199 ˙S. W. 730; Mathews v.
Modern Woodmen of America, 236 Mo. 326; Souders v. Common-
wealth Casualty Co., 246 S. W. 613.]

Now, section 5729, Revised Statutes 1929, 6 Mo. St. Ann., p. 4369,
provides that "no life insurance company doing business in this
State shall make . . . any contract of insurance, or agreement
as to such contract other than as plainly expressed in the policy
issued thereon."

Neither the application nor the certificate says that the constitu-
tion, by-laws, rules or regulations are "a part of the contract." And
the reference thereto as to his complying therewith, relates to and
means only such as relate to the regulation and conduct of the affairs
of the association and the duties of its members but not those which
attempt to charge or nullify the certificate; and certainly the rights
of plaintiff thereunder cannot be destroyed, impaired, or taken away
by any by-law *subsequently* enacted by the association. [Dessauer
v. Supreme Tent, Knights of the Maccabees, 278 Mo. 57; Wilcox v.
Court of Honor, 134 Mo. App. 547; Sisson v. Supreme Court of
Honor, 104 Mo. App. 54.]

The certificate promises to pay upon "total and permanent dis-
ability" without qualification, while the constitution attempts to
define and limit total and permanent disability "to the loss of a hand
or foot or both eyes or arrival of 70 years of age." Thus there is a
conflict between the contractual terms of the certificate and the terms
of the constitution. In such case, even if the constitution and by-
laws could be considered a part of the contract, the society will be
deemed to have waived the by-laws and the certificate will govern
the rights of the parties. [45 C. J., p. 33, par. 28; Laker v. Royal
Fraternal Union, 95 Mo. App. 353; State ex rel. v. Trimble et al.,
Judges, 39 S. W. (2d) 355; Nastav v. Missouri Mutual Assn., 47 S.
W. (2d) 166.]

If, on the facts, one provision of the policy creates liability and
another limits it, the former will be enforced. [Kimbrough v. Na-
tional Protective Association, 225 Mo. App. 913.]

The certificate or policy recites "that brother Edward W. Rags-
dale—a member of Magic City Lodge No. 57 of said brotherhood—
is entitled to all the rights, privileges and benefits of membership

and to participate in the beneficiary department . . . to the amount set forth in the constitution thereof, which amount *in the event of his total and permanent disability* shall be paid to him, or at his death to Hattie J. Ragsdale, etc.'' (Italics mine.)

At the time plaintiff's application was made out and of his acceptance of the policy, and since that time, defendant issued, over the facsimile signature of its grand secretary and treasurer, a printed statement on the back of its printed pamphlet containing its constitution and by-laws, that ''*Every member is insured against total and permanent disability* and death.'' (Italics mine.) Plaintiff knew of this and relied on it in making his application, accepting his certificate and paying his dues, and thus defendant is estopped from now claiming a limitation of the ''total and permanent disability'' by afterwards providing or attempting to provide that it must arise from a particular and specified cause. [Steele v. St. Louis Mut. Life Ins. Co., 3 Mo. App. 207; Hetchler v. American Life Ins. Co., 245 N. W. 221, 224.]

Section 37 of the constitution, in force at the time the certificate or policy was issued, provided for three classes of insurance, of which Class C was one, and that the certificate issued should show the class in which it was issued, and provided for the payment . . . of the full amount of such class ''upon his becoming totally and permanently disabled within the meaning of section 45.'' Section 45 provided that ''any member in good standing suffering by means of physical separation, either the loss of a hand at or above the wrist joint, shall be considered totally and permanently disabled.'' However, the *policy* said *nothing about* the total and permanent disability being such as was ''within the meaning of section 45.'' Hence it was not issued in accordance with section 37. Hence, the provision of section 45 was waived even if it should otherwise be deemed to have been a part of the policy. So that, under one horn of defendant's dilemma, the provisions of section 45 were waived, and under the other the policy directly conflicts with the terms of section 45 and, therefore, the terms of the policy must control. The words ''total and permanent disability'' are simple, not technical, expressions; and hence section 45 does not *define* them but merely seeks to *limit* the disability to that which comes from the three causes specified. Consequently, plaintiff, when he received and accepted his policy, had the right to take these words for what they said in plain, every-day language. He did not have to hunt for any technical definition either in the dictionary, the defendant's constitution, or elsewhere.

Finally, the certificate, in a number of particulars, does not comply with section 5997, Revised Statutes 1929, 6 Mo. St. Ann., p. 4569.

It makes no mention of the application nor does it refer to the medical examination, and in other respects it fails to comply with said section. Said application in its opening paragraph says, "I, Edward William Ragsdale, hereby make application for a beneficiary certificate, Class C, $1200 in the brotherhood of Railroad Trainmen, and for that purpose make the following statements as to the basis of the contract between said brotherhood and myself," and in the closing paragraph of said application, it says, "I, the undersigned applicant, hereby agree that . . . all the foregoing statements . . . *shall make the basis of the contract with said brotherhood.*" (Italics mine.) And yet the application makes no statement about the constitution or by-laws nor the meaning to be given to the words "total and permanent disability" nor does the certificate do so, nor as to what law shall apply. Apparently, defendant recognized its *unlimited* liability on certificates issued in the form in which plaintiff's was, for, subsequent to the issuance of plaintiff's certificate it changed the form of all certificates *thereafter* issued so that they read: "in the event of his total and permanent disability *as defined by section 68 of the constitution.*" (Italics mine.)

Furthermore, the fact that the policies, of which the one in suit is in the same class, were not paid each time by an assessment for such loss, but out of a fund of $6,000,000 established for that purpose; and this takes defendant out of the category of assessment companies and makes the policy sued on an old line policy.

There is no question but that there is evidence amply supporting the trial court's finding that plaintiff "prior to May 1, 1933, became totally and permanently disabled." This was by disease and not through having lost a hand or foot or by becoming 70 years of age. While the judgment recites that "plaintiff became totally and permanently disabled prior to May 1, 1933," the fact is that he became so in July, 1931, and paid his dues and remained in good standing until May 1, 1933. Hence we cannot see how his failure to pay dues, after notice of his total and permanent disability had been given to defendant, could deprive him of his rights under the policy; nor do we see how he could be estopped from insisting upon his claim, merely because he used the blanks and forms sent him by the company.

The judgment is affirmed. All concur.